373 S.E.2d 345

**Judy E. LEE**

v.

**Leslie A. SALIGA, et al.**

**Michelle LEE, an Infant, etc.**

v.

**Leslie A. SALIGA, et al.**

**Jennings PERRINE, et al.**

v.

**Leslie A. SALIGA, et al.**

**No. CC971.**

Supreme Court of Appeals of
West Virginia.

Sept. 16, 1988.

Vincent J. King, Hunt & Wilson, Charleston, for Judy Lee.

R. Gregory McDermott, Wheeling, William Cipriani Wellsburg, for Perrines and Michelle Lee.

John B. Garden, Wheeling, for Leslie A. Saliga.

Elizabeth H. Rose, Fairmont, for John Doe.

**MILLER, Justice:**

The Circuit Court of Marshall County has certified questions to us in these consolidated cases pursuant to W.Va.Code, 58–5–2.[1] These questions require us to decide whether the requirement of physical contact contained in our uninsured motorist statute, W.Va.Code, 33–6–31(e)(iii), applies to an uninsured motorist insurance policy issued in Pennsylvania.[2] The circuit court found that West Virginia law applied and that physical contact was necessary. We come to the contrary conclusion under our conflict of laws rule, and hold that the question is controlled by the law of Pennsylvania, the state in which the policy was issued and the insured risk was located.

### I.

Judy E. Lee, one of the defendants below, is a resident of York County, Pennsylvania. She was the named insured under a policy of motor vehicle liability insurance issued in April, 1984, by Maryland Casualty Company. Endorsements attached to the policy demonstrate that it was issued in conformity with Pennsylvania law.

The Maryland Casualty policy provided coverage in the amount of $30,000 for damages attributable to the negligence of the operator or owner of an "uninsured motor vehicle." Embraced within the definition of an "uninsured motor vehicle" was a "hit and run vehicle whose operator and owner cannot be identified." Where recovery was sought by the insured for damages caused by a hit and run vehicle, the policy expressly required physical contact with the insured's vehicle as a condition precedent to recovery.[3]

---

1. As relevant here, W.Va.Code, 58–5–2, provides that the parties to a suit may upon joint application certify "[a]ny question arising upon ... a challenge of the sufficiency of a pleading...."

2. While a variety of questions were certified to us, we conclude that the controlling question is: "Whether the physical contact requirement of West Virginia Code Section 33–6–31(e)(iii) should apply where the parties to the insurance contract are residents of and the contract was written in a state which does not require physi-

cal contact[?]" In *City of Fairmont v. Retail, Wholesale and Dept. Store Union, AFL–CIO*, 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590 (1980), it was stated that "[w]e have traditionally maintained that upon receiving certified questions we retain some flexibility in determining how and to what extent they will be answered." (Citations omitted).

3. The uninsured motorist provisions of the policy read, in part:

The facts of the accident are summarized from the complaints. On July 9, 1984, Ms. Lee was operating a motor vehicle in which her infant daughter, Michelle, and Jennings and Dolly Perrine were passengers. At approximately 11:55 a.m., Ms. Lee exited Interstate 70 at Sixteenth Street in Wheeling. As she pulled onto the exit ramp, she observed a vehicle in front of her illegally backing toward her. The driver of the other vehicle was unknown. Ms. Lee slowed to a stop and was immediately struck in the rear by another vehicle driven by Leslie A. Saliga. The unknown driver fled the scene. Each of the occupants of the Lee vehicle sustained physical injury. Suits were filed against Ms. Lee and Ms. Saliga, and against the unknown motorist as "John Doe."

Maryland Casualty appeared for "John Doe" and moved to dismiss the suit against it, as physical contact with "John Doe" was not averred in the complaint. The parties jointly agreed to certify to this Court the issue of the enforceability of the physical contact requirement.[4]

## II.

The issue presented is whether the validity of the physical contact clause is to be

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury: (1) sustained by a covered person; and (2) caused by an accident.

\* \* \* \* \* \*

" 'Uninsured motor vehicle' means a land motor vehicle or trailer of any type ... [w]hich is *a hit and run vehicle* whose operator or owner cannot be identified and *which hits:* (a) you or any family member; (b) a vehicle which you or any family member are occupying; or (c) your covered auto." (Emphasis added).

These provisions were amended by policy endorsement to eliminate the need for physical contact as a condition of recovery. The parties dispute whether the endorsement was operative on the date of the accident. As we point out, *infra*, the Pennsylvania courts have held that a physical contact requirement in an uninsured motorist provision contravenes Pennsylvania public policy. Thus, under Pennsylvania law, the main policy provision requiring physical contact would be void. *Webb v. United Serv. Auto. Ass'n,* 227 Pa.Super. 508, 323 A.2d 737 (1974).

determined by the law of West Virginia, the situs of the accident, or of Pennsylvania, the situs of the insurance policy and the residence of the insured. A requirement of physical contact is directly incorporated into West Virginia's uninsured motorist statutory provisions, W.Va.Code, 33–6–31(e)(iii).[5] In Pennsylvania, physical contact is not a requirement under its Uninsured Motorist Coverage Act. To the contrary, it was held in *Webb v. United Serv. Auto. Ass'n,* 227 Pa.Super. 508, 323 A.2d 737 (1974), that such a requirement in an automobile insurance policy was void as contrary to public policy. A proper analysis of the conflict of laws issue requires a brief review of the nature and scope of uninsured motorist insurance.

## A.

Uninsured motorist protection is an innovation of recent decades, and is included as a separate coverage in the insured's motor vehicle liability policy. As it typically appears, the insurer promises to pay (up to the policy limits) benefits equal to the damages the insured is entitled to recover from an uninsured negligent motorist. The pur-

4. As phrased by the parties, the other certified questions seek an interpretation of the physical contact requirement provided for under W.Va. Code, 33–6–31(e)(iii). We do not reach these questions of West Virginia law, as we find Pennsylvania law to be applicable.

5. W.Va.Code, 33–6–31(e)(iii), provides, in part:

"(e) If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured be unknown, the insured, or someone in his behalf, in order for the insured to recover under the uninsured motorist endorsement or provision, shall:

\* \* \* \* \* \*

"(iii) Upon trial establish that the motor vehicle, which caused the bodily injury or property damage, whose operator is unknown, was a 'hit and run' motor vehicle, meaning a motor vehicle which *causes damage to the property of the insured arising out of physical contact of such motor vehicle therewith, or which causes bodily injury to the insured arising out of physical contact of such motor vehicle with the insured or with a motor vehicle which the insured was occupying at the time of the accident....*" (Emphasis added).

pose of such insurance is to protect insureds against damages caused by financially irresponsible motorists. No–Fault and Uninsured Motorist Automobile Insurance § 23.00 (1987).

As with all types of insurance, uninsured motorist insurance is a contract between the insurer and the insured. 12 Appleman, Insurance Law and Practice § 7001 (1981). Generally, that contractual relationship is controlled by the law of the state in which the policy was issued, as reflected in that state's uninsured motorist statute. 8C Appleman, Insurance Law and Practice § 5069.35 (1981).

A policy of uninsured motorist insurance provides "first party" protection to the insured—that is, the insurer promises to pay the benefits of all meritorious claims directly to the insured. Uninsured motorist benefits, then, are indemnity for losses sustained by the insured which are paid pursuant to the insurer's contractual obligation.

It follows from these principles that the right to obtain uninsured motorist benefits derives from the insurance contract, and that a suit for recovery of such benefits is ex contractu. 8D Appleman, Insurance Law and Practice § 5135 (1981); *Cline v. Aetna Ins. Co.*, 317 F.Supp. 1229 (S.D.Ala.1970); *Booth v. Fireman's Fund Ins. Co.*, 253 La. 521, 218 So.2d 580 (1968); *Pappas v. Aetna Cas. & Surety Co.*, 191 So.2d 658 (La.App.1966); *Reese v. State Farm Mut. Auto. Ins. Co.*, 285 Md. 548, 403 A.2d 1229 (1979); *Motorists Mut. Ins. Co. v. Tomanski*, 27 Ohio St.2d 222, 271 N.E.2d 924, 56 O.O.2d 133 (1971). To recover uninsured motorist benefits, therefore, an insured must prove (1) the existence of a valid policy of uninsured motorist insurance, and (2) entitlement to benefits under the policy. No–Fault and Uninsured Motorist Automobile Insurance § 25.00[1] (1987).

There is in any uninsured motorist case a related tort aspect. The liability of the insurance company providing uninsured motorist coverage is not absolute.

Rather, it is conditioned on the insured's right of recovery against the uninsured motorist for the latter's negligent conduct. The insurer stands in the shoes of the uninsured motorist, and is required to pay only if the motorist is or would be liable to the insured. 8C Appleman, Insurance Law and Practice § 5086 (1981). As most policies phrase it, the insured must be "legally entitled to recover" from the uninsured motorist.

The determination of the uninsured motorist's liability is to be made by reference to the general rules of tort law. Simply put, the insured "must allege and prove the same elements of fault and damages that are required to be proved in common law tort actions against tortfeasors." No–Fault and Uninsured Motorist Automobile Insurance § 25.00[2] (1987). (Footnote omitted.)

We also observe that Pennsylvania and West Virginia have adopted distinct statutory methods by which to accommodate the tort aspect of uninsured motorist cases. Pennsylvania law permits a direct action by the insured against the uninsured motorist carrier. 75 Pa.Cons.Stat.Ann. § 1731, *et seq.*, and cases cited therein. On the other hand, W.Va.Code, 33–6–31, provides a specialized procedure to determine the motorist's fault, commonly referred to as a "John Doe" suit. We discussed this procedure at some length in *Davis v. Robertson*, 175 W.Va. 364, 369, 332 S.E.2d 819, 824–26 (1985).[6] Under our procedure, an insured is required to "sue" the unknown motorist as "John Doe." The insurance carrier is independently served with process, and may enter an appearance and defend "John Doe."

A "John Doe" suit, consistent with the principles stated above, is deemed to sound in tort. As we said in Syllabus Point 1 of *Perkins v. Doe*, 177 W.Va. 84, 350 S.E.2d 711 (1986): "A suit filed pursuant to West Virginia Code § 33–6–31(e) (Supp. 1986), the 'John Doe' provision of the unin-

---

**6.** As we pointed out in *Davis,* three other jurisdictions have "John Doe" statutes similar to our own. Ga.Code § 33–7–11; S.C.Code Ann. § 38–77–180; Va.Code § 38.2–2206.

sured motorist statute, is an action in tort." [7]

## B.

■ With this background, we turn to the conflict of laws issue here presented. As we have already mentioned, uninsured motorist cases may raise questions of both tort and contract law. Where such a question involves an aspect of policy *coverage*, rather than *liability*, it is treated as a contract question for purposes of conflicts analysis. 1 A. Widiss, Uninsured and Underinsured Motorist Insurance § 7.15 (1985). So, for example, questions which relate to the enforceability of exclusionary clauses in the insurance policy, *Lewis v. American Family Ins. Group*, 555 S.W.2d 579 (Ky.1977); *Boardman v. United Serv. Auto. Ass'n*, 470 So.2d 1024 (Miss.1985), the availability of policy "stacking," *Eagle Star Ins. Co. v. Parker*, 365 So.2d 780 (Fla.App.1978); *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43 (Minn.1978), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); *Kemp v. Allstate Ins. Co.*, 183 Mont. 526, 601 P.2d 20 (1979), and the applicable limits of uninsured motorist coverage, *Travelers Indemnity Co. v. Stearns*, 116 N.H. 285, 358 A.2d 402 (1976); *Burns v. Aetna Cas. & Surety Co.*, 741 S.W.2d 318 (Tenn.1987), are all deemed to be contract questions.

■ We thus conclude that where in a suit for the recovery of uninsured motorist insurance benefits an issue arises which involves insurance coverage, that issue is to be resolved under conflict of laws principles applicable to contracts.[8]

We acknowledge that in *Perkins v. Doe*, 177 W.Va. 84, 350 S.E.2d 711 (1986), we made an analysis of a similar question and applied the conflict of laws rule for torts, but this was due to the manner in which the questions were certified to us. In *Perkins*, a West Virginia resident who was covered by an automobile liability policy which contained an uninsured motorist provision filed a "John Doe" action in a West Virginia circuit court against his own insurance carrier. The accident had occurred in Virginia, whose uninsured motorist statute did not require physical contact.

The carrier, State Farm Mutual Automobile Insurance Company, removed the case to the United States District Court for the Southern District of West Virginia. The district court certified questions to this Court which essentially required resolution of the question of whether the Virginia or the West Virginia uninsured motorist provision applied under tort conflict of laws principles.[9] No analysis was made in *Perkins* of the policy provision. We do not deem *Perkins* to be controlling on the issues presented in this case.

Research has produced only a handful of cases which deal directly with the conflicts rule to be applied where the policy is issued in a state that does not require physical contact and the accident occurs in a state that requires such contact. Each of these cases treats the issue as one of policy *coverage* subject to conflict rules for contracts. These courts have generally concluded that the state where the contract of insurance was issued and the insured resided would control the interpretation of that contract. Thus, if the state law where the

---

7. It is perhaps more accurate to say that a "John Doe" suit *simulates* a tort suit, since it is a wholly artificial procedure and "John Doe" is merely a putative defendant.

8. It is clear from Syllabus Point 6, in part, of *Perkins v. Doe*, 177 W.Va. 84, 350 S.E.2d 711 (1986), that "[a]n insurance company may assert any contractual defenses in an action by the insured to recover on the uninsured motorist endorsement of his liability policy."

9. The three certified questions are set out in note 1 of *Perkins*, 177 W.Va. at 85, 350 S.E.2d at 713. Question 2 is typical:

"If your response to Question Number One is 'Virginia law,' does the doctrine that *lex loci* must yield when it conflicts with the public policy of the *lex fori*, *Chase v. Greyhound Lines, Inc.*, 156 W.Va. 444, 195 S.E.2d 810, 813 (1973), *overruled on other grounds, Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721 (1976); *Poling v. Poling*, 116 W.Va. 187, 189, 179 S.E. 604 (1935), bar Plaintiffs' claim?"

*Chase* and *Poling* involved tort actions where the question was whether the *lex loci delicti* conflicts rule should be applied.

contract is issued forbids a physical contact requirement, this law will be applied. *E.g., Lee v. Wheeler,* 258 U.S.App.D.C. 184, 810 F.2d 303 (D.C.Cir.1987); *National Union Fire Ins. Co. v. Binker,* 665 F.Supp. 35 (D.D.C.1987); *Howard v. Doe,* 174 Ga.App. 415, 330 S.E.2d 370 (1985); *Cole v. State Automobile & Cas. Underwriters,* 296 N.W.2d 779 (Iowa 1980); *Allstate Ins. Co. v. Walsh,* 115 Misc.2d 907, 454 N.Y.S.2d 774 (Sup.Ct.1982).

Typical of this approach is the decision by the Iowa Supreme Court in *Cole.* There, an insurance contract was issued in Minnesota which contained a physical contact requirement. However, the Minnesota Supreme Court had in a prior case invalidated the physical contact requirement as contrary to its uninsured motorist statute.[10] The accident happened in Iowa, where physical contact was still required by that state's uninsured motorist statute. The Iowa court, quoting from *Insurance Managers, Inc. v. Calvert Fire Ins. Co.,* 261 Iowa 155, 163, 153 N.W.2d 480, 484 (1967), stated:

> "[W]e adhered to the rule as quoted from 44 C.J.S. Insurance § 52: An insurance policy is governed
>> as to its nature, validity, and interpretation or construction ... by the law of the place where it was made or consummated, unless the parties clearly appear to have intended the law of a different place to govern....
>> A contract of insurance is deemed to have been made in the state where the last act was done which was necessary to create the contract."

296 N.W.2d at 781.

The court went on to indicate it had adopted Section 187 of the Restatement (Second) of Conflict of Laws, which recognizes that subject to certain restrictions "contracting parties can themselves determine the law which is to control." Further provisions of the Restatement come into

play where the parties do not choose an applicable state whose law will control. Where there is no choice of law by the parties, the court "applies the law of the jurisdiction with the 'most significant relationship' to the transaction in dispute." 296 N.W.2d at 781. The Iowa court concluded that Minnesota had more significant contacts and that its law would be applied.

We are persuaded that *Cole* and the other cases cited herein represent a proper application of the principle that questions of policy coverage are contract questions. Having concluded that the issue presented is one of contract, we turn to a discussion of the appropriate conflicts rule.

### III.

Our general conflict of laws rule in contract cases was discussed at some length in *General Elec. Co. v. Keyser,* 166 W.Va. 456, 275 S.E.2d 289 (1981), where we recognized the paucity of our law in this area and stated that this was "often [a] confusing area of law." 166 W.Va. at 460, 275 S.E.2d at 292. *See* 16 Am.Jur.2d, *Conflicts of Law* § 74, *et seq.* (1979); *see also Paul v. Nationwide Life Ins. Co.,* 177 W.Va. 427, 352 S.E.2d 550 (1986) (discussing origins of conflict of laws rules and the rule in tort cases).

In that opinion, we relied on the provisions of Section 187(2) of the Restatement (Second) of Conflict of Laws to invalidate a choice of law provision contained in the contract.[11] We concluded in our analysis in *Keyser* by citing in Syllabus Point 2 what has been our traditional statement of the contract conflict of laws rule:

> " 'The law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state'. Syl. pt. 1 (in part) *Michigan National Bank v. Mattingly,* 158 W.Va. 621, 212 S.E.2d 754 (1975)."

---

10. *Halseth v. State Farm Mut. Ins. Co.,* 268 N.W.2d 730 (Minn.1978).

11. Syllabus Point 1 of *Keyser* stated:
"A choice of law provision in a contract will not be given effect when the contract bears no substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement, or when the application of that law would offend the public policy of this state."

*See also Pemco Corp. v. Rose,* 163 W.Va. 420, 257 S.E.2d 885 (1979).

This rule, which was derived from Syllabus Point 3 of *State v. Hall,* 91 W.Va. 648, 114 S.E. 250 (1922),[12] assumes that the contract was both made and to be performed in another state. It is quite apparent, however, that a contract can be made in one state and performed in another. This was, in fact, the situation in *Mattingly.* We concluded in *Mattingly* that "[t]he conflict of laws question in this case evolved into a factual issue" as to where the contract was made. 158 W.Va. at 625, 212 S.E.2d at 757. This factual issue arose because there was conflicting evidence as to where the contract was executed.

More recently in *New v. Tac & C Energy, Inc.,* 177 W.Va. 648, 355 S.E.2d 629 (1987), we dealt with a contract which was made in this State, but was performed in another. An employment contract was at issue and there was a dispute over wages and fringe benefits. The company by which the two plaintiffs were employed was headquartered in West Virginia, where all of its administrative matters were handled. The two plaintiffs, however, worked at the company's mine site in Kentucky. We cited Syllabus Point 2, in part, of *In re Fox's Estate,* 131 W.Va. 429, 48 S.E.2d 1 (1948).[13] We ultimately resolved the conflicts issue by applying Section 196 of the Restatement (Second) of Conflict of Laws. This section deals with contracts to render services, and gives preference to the law of the state where the services are to be performed.

This section, however, contains two qualifications: (1) the parties can in the contract exercise a choice of law, and (2) the preference for the law of the place of rendition of the services can be altered to a state that has a more significant relationship to the transaction and the parties. After analyzing the factual situation, we concluded that West Virginia law should apply because it had more substantial contacts. *See also Jones v. Tri–County Growers, Inc.,* 179 W.Va. 218, 366 S.E.2d 726 (1988).

This survey of our conflict cases lends itself to several conclusions. Our traditional contract conflict rule gives substantial deference to the state where the contract is made and where it is to be performed, assuming both incidents occur in the same state. This rule is subject to two qualifications: (1) that the parties have not made a choice of applicable law in the contract itself; and (2) the law of the other state does not offend our public policy.

Another conclusion is that despite some criticism of the Restatement (Second) of Conflicts of Laws rules in the tort area,[14] we have utilized Restatement conflict of laws principles in our cases. It cannot be doubted that the Restatement principles do embody what may be termed the modern trend of the law. *See* Annot., 20 A.L.R.4th 738 (1983) (conflict of laws rule in cases involving automobile liability policy). Its principles do not differ materially from our

---

12. Syllabus Point 3 of *Hall* states: "A contract made and to be performed in a state other than this will be interpreted and enforced in the courts of this State in conformity with the laws of such other state, in the absence of a rule or measure of public policy of this State, denying it such construction, operation, and effect."

13. Syllabus Point 2 of *In re Fox's Estate,* provides: "The laws of the state where a contract is made and is to be performed determine the substantive rights of the parties to such contract; but in the enforcement of those rights by litigation, the procedural laws of the state where enforcement is sought control."

14. This criticism is contained in *Paul v. Nationwide Life Ins. Co.,* 177 W.Va. 427, 352 S.E.2d 550 (1986). However, the author of *Paul* has more

recently tempered his view, stating in *Oakes v. Oxygen Therapy Serv.,* 178 W.Va. 543, 363 S.E.2d 130, 131 (1987), that "on appropriate occasions [we have] repaired to the standards set forth in the *Restatement* to resolve particularly thorny conflict problems." (Citation omitted). *Oakes* was a retaliatory discharge case where the key question was what law governed the employment contract. Oakes, a West Virginia resident, was employed in Maryland and was injured there. He filed a Maryland workers' compensation claim and was then fired. He brought his retaliatory discharge suit in West Virginia relying, in part, on the substantial contacts test contained in Section 6 of the Restatement, *see* note 17, *infra.* We found the law of the State of Maryland to be applicable. Its law did not recognize a retaliatory discharge claim.

existing law and are designed to provide a fixed standard, yet allow for some flexibility by its qualification that in complex cases a substantial contact analysis is appropriate.

Turning our attention to the present case, we find it of importance that it involves an insurance contract. We have in the past decided several cases which involved insurance contracts where a conflict of laws issue appears to have existed. *E.g., New York Life Ins. Co. v. Bonasso,* 121 W.Va. 143, 2 S.E.2d 260 (1939); *S.M. Smith Ins. Agency v. Hamilton Fire Ins. Co.,* 69 W.Va. 129, 71 S.E. 194 (1911); *Galloway v. Standard Fire Ins. Co.,* 45 W.Va. 237, 31 S.E. 969 (1898). However, on closer examination, these cases do not purport to formulate any general conflict of laws rule. Rather, they stand for the simple proposition that if the insurance contract is issued in this State, then it will be construed under the laws of this State.[15]

The Restatement conflicts rule on fire, surety, or casualty insurance is contained in Section 193. It gives deference to the "state which the parties understood was to be the principal location of the insured risk," [16] subject to the qualification for the substantial contacts test contained in Section 6 of the Restatement.[17] The Restatement does not mention as a factor the state where the policy is issued. However, in its discussion of the rule, it is pointed out that in this type of insurance, the policy will be solicited and issued by a local agent and this will ordinarily coincide with the situs of the insured risk.[18] Thus, the holding of our earlier insurance cases that a contract issued by a local agent will be controlled by West Virginia law will be met.

There are other reasons that reinforce this conflict of laws rule. The usual coincidence of the insurance agent, insured, and the risk in the same state dictates that the parties would be more familiar with that state's insurance statutes, which often supplement or control the policy provisions. This law should control the reasonable expectation of the parties, rather than that of another state whose only connection to the dispute is the fortuity that the accident occurred there.

Consequently, we find that the Restatement standard and its commentary provide useful guidance along with our ear-

15. *New York Life Ins. Co. v. Bonasso, supra,* contains this terse statement: "[t]he policy under consideration, having been countersigned and delivered in this state, should be interpreted under the laws of this state[.]" 121 W.Va. at 146, 2 S.E.2d at 262. *Smith Ins. Agency v. Hamilton Fire Ins. Co., supra,* and *Galloway v. Standard Fire Ins. Co., supra,* contain equally brief statements to the effect that the policy was countersigned in this State and, therefore, became a contract of this State.

16. Section 193 of the Restatement (Second) of Conflict of Laws provides:

"The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."

17. Section 6 of the Restatement states:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

18. Commentary (b) to Section 193 of the Restatement provides, in part:

"In the normal case, therefore, the policy will have been solicited and delivered and the last act necessary to make the contract binding will have taken place in the state where the insured is domiciled or incorporated, and where the insured risk is located. This state, in such a situation, will usually be the state of the applicable law, at least with respect to most issues."

lier cases in fashioning the following rule: The provisions of a motor vehicle liability policy will ordinarily be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state has a more significant relationship to the transaction and the parties.[19]

Having answered the controlling certified question to require the application of

Pennsylvania law, the case is remanded to the Circuit Court of Marshall County.

Certified Questions Answered and Case Remanded.

**19.** We also recognize the conflict of laws principle that a state may ignore the law of another state if it is contrary to its own public policy. *Paul v. Nationwide Life Ins. Co., supra; State v. Hall,* 91 W.Va. 648, 114 S.E. 648 (1922); 2 Couch on Insurance § 16.48 (2d ed. 1984). This is not an issue here.

It should be pointed out that the general rule regarding the right of parties to make a choice of law in the contract is of limited applicability by virtue of W.Va.Code, 33–6–14 (1957), which provides in relevant part:

"No policy delivered or issued for delivery in West Virginia and covering a subject of insurance resident, located, or to be performed in West Virginia, shall contain any condition, stipulation or agreement requiring such policy to be construed according the laws of any other state or country, except as necessary to meet the requirements of the motor vehicle financial responsibility laws or compulsory disability benefit laws of such other state or country[.]"

We also note, as does Section 6 of the Restatement, *see* note 17, *supra,* that a court's arbitrary selection of its own law may trigger a full faith and credit problem under U.S. Const. art. IV, § 1, and the due process clause of the Fourteenth Amendment. *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). However, even under *Hague's* rather extreme facts, no constitutional violation was found. There, Minnesota applied its automobile insurance law to a policy issued to a Wisconsin resident who was killed in Wisconsin in an automobile accident involving other Wisconsin residents. The only Minnesota connection was that the deceased was on his way to his place of work in Minnesota which was near the accident scene. Further, his wife moved to Minnesota after the suit was filed. Wisconsin's insurance law precluded the "stacking" of coverage, while Minnesota law permitted it.