Roger NADLER, Executor of the Estate of James A. Schoettker, et al., Plaintiffs,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant.

Civ. A. No. 5:89–0450.

United States District Court, S.D. West Virginia, at Beckley.

Nov. 21, 1990.

---

Mark D. Moreland, Preiser & Wilson, Charleston, W.Va., for plaintiffs.

J. Peter Richardson, Richardson, Kemper, Hancock & Davis, Bluefield, W.Va., for defendant.

## MEMORANDUM ORDER AND OPINION

HALLANAN, District Judge.

This matter is before the Court via the parties' cross-motions for summary judgment. After careful consideration of the parties' pleadings, and memoranda in support thereof, as well as the oral argument of counsel, the Court is now prepared to render its decision. For the reasons listed below, the Plaintiffs' motion for summary judgment is hereby ORDERED DENIED and the Defendant's motion for summary judgment is hereby ORDERED GRANTED.

## SUMMARY OF FACTS AND PROCEEDINGS

The following facts of this case are undisputed. On March 27, 1988, a tractor-trailer truck owned by Benjamin Thomas, Sr., and Thomas Trucking Company and operated by Benjamin Thomas, Jr., an employee and duly authorized agent of Benjamin Thomas, Sr. and Thomas Trucking Company, crossed into the opposing lane of traffic while traveling on U.S. Route 60 West in Greenbrier County, West Virginia, striking a 1985 Buick owned and operated by James A. Schoettker. James A. Schoettker's wife, Sylvia B. Schoettker, and their children, Robert Maxwell Schoettker, Kathleen Suzette Schoettker, Matthew Alan Schoettker, Allyson Marie Schoettker, Tiffany Noelle Schoettker and Sara Schoettker were all passengers in said Buick. As a result of this accident, James A. Schoettker and his daughter Sara were killed while the rest of the passengers all suffered serious bodily injuries. As a result of her injuries, Sylvia B. Schoettker also lost her unborn child.

At the time of this tragic accident, all of the occupants of the Schoettker automobile were residents of West Chester, Butler County, Ohio. The Schoettkers were insured under an insurance policy issued by Liberty Mutual Fire Insurance Company [hereinafter "Liberty Mutual"] in Ohio, such policy containing a medical pay provision and also providing for liability coverage, uninsured motorist coverage, and underinsured motorist coverage [hereinafter "the Schoettker policy"]. The declaration page of the Schoettker policy provided liability coverage for three vehicles owned by the Schoettkers, including said Buick, all of which were registered in Ohio, while establishing uninsured and underinsured motorist coverage limits of $300,000.00 per accident for two of the vehicles owned by the Schoettkers, including said Buick. Separate premiums were charged for each vehicle.

Said tractor-trailer truck owned by Benjamin Thomas, Sr., and Thomas Trucking Company was insured under a liability insurance policy, coincidentally also issued by

Liberty Mutual, with a single accident liability coverage limit of $325,000.00 [hereinafter "the Thomas policy"]. While Liberty Mutual has offered to pay the Plaintiffs the liability coverage limit under the Thomas policy, it has refused the Plaintiffs' demand for payment under the underinsured motorist provision of the Schoettker policy.

On April 24, 1989, the Plaintiffs brought this declaratory judgment action seeking to have this Court declare the parties' respective rights and duties relative to the above-mentioned insurance policies. More specifically, the Plaintiffs contend in their Complaint that they are entitled to receive underinsured motorist coverage benefits under the Schoettker policy, that they are entitled to stack their underinsured motorist coverage, that the payment they receive under the Thomas policy cannot be setoff against the coverage limit under the Schoettker policy, and that the Defendant has refused to negotiate in good faith. In regards to their allegation that the Defendant has refused to negotiate in good faith, the Plaintiffs seek to recover attorneys' fees and costs and request the Court to issue an Order compelling the Defendant to comply with W.Va.C. § 33–11–4(9) and to negotiate in good faith.

The Defendant filed its Answer denying the above contentions and asserting the affirmative defense that the Plaintiffs are not entitled to underinsured motorist coverage under the Schoettker policy since that policy has underinsured motorist coverage limits of $300,000.00 while the Thomas policy has liability coverage limits of $325,-000.00. Both Plaintiffs and Defendant, agreeing that there are no material facts in dispute, now move this Court to grant them summary judgment.[1]

## ARGUMENT

The dispositive issue in this case appears to be one of choice of law. Should Ohio law govern the above issues, it appears clear that the Defendant will be entitled to summary judgment. The Defendant has

cited relevant Ohio authority on such issues, *see* Defendant's Memorandum in Support of Motion for Summary Judgment, and the Plaintiffs in fact admit that if Ohio law governs this dispute they will not be entitled to receive any underinsured motorist coverage under the Schoettker policy. Plaintiffs' Combined Motion for Summary Judgment and Memorandum in Support Thereof at 5–6; Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment at 3. While, on the other hand, should West Virginia law govern the interpretation of these policies, it would appear likely that the Plaintiffs would prevail. *See* W.Va.C. § 33–6–31; *State Automobile Insurance Co. v. Youler*, 396 S.E.2d 737 (W.Va.1990).

It is elementary that a federal district court sitting with diversity jurisdiction must follow the settled law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The question thus becomes what state's law would be applied by the West Virginia Supreme Court of Appeals to the issue presented here if such matter were before it. West Virginia generally still adheres to the traditional conflict of laws principles. Thus characterization of the issue presented will normally be the threshold inquiry, i.e., is the issue presented one of tort or contract?

The West Virginia Supreme Court of Appeals has noted that "[t]here is in any uninsured motorist case a related tort aspect.... The insurer stands in the shoes of the uninsured motorist, and is required to pay only if the motorist is or would be liable to the insured.... [And] [t]he determination of the uninsured motorist's liability is to be made by reference to the general rules of tort law." *Lee v. Saliga*, —— W.Va. ——, 373 S.E.2d 345, 348 (1988). It was an acknowledgement of such factors which led the West Virginia Supreme Court of Appeals to note in *Perkins v. Doe*, —— W.Va. ——, 350 S.E.2d 711 (1986), that a

---

**1.** The Plaintiffs do not seek summary judgment as to their contentions that the Defendant has

refused to negotiate in good faith.

"John Doe" suit, a specialized procedure to determine a motorist's fault pursuant to W.Va.Code 33–6–31, is deemed to sound in tort.[2]

■ However, that Court has also concluded that "... where in a suit for the recovery of uninsured motorist insurance benefits an issue arises which involves insurance coverage, that issue is to be resolved under the conflict of laws principles applicable to contracts." *Lee*, 373 S.E.2d at 349. The traditional contract conflict of laws rule followed by West Virginia is that "[t]he law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this State." Syl. pt. 1 *Michigan National Bank v. Mattingly*, 158 W.Va. 621, 212 S.E.2d 754 (1975); *See also State v. Hall*, 91 W.Va. 648, 653, 114 S.E. 250 (1922); *General Elec. Co. v. Keyser*, 166 W.Va. 456, 275 S.E.2d 289, 295 (1981).

In *Lee*, the West Virginia Supreme Court of Appeals conducted a brief survey of its contract conflict cases and reached several conclusions. First, the Court noted that its traditional contract conflict of laws rule "... is subject to two qualifications: (1) that the parties have not made a choice of applicable law in the contract itself; and (2) the law of the other state does not offend our public policy." *Lee*, 373 S.E.2d at 351.

The Court then noted that it has also on occasion utilized the Restatement (Second) Conflicts of Laws rules to help resolve complex cases. After citing the Restatement (Second) Conflicts of Laws §§ 193 and 6 and discussing the commentary relevant to such sections[3], the Court concluded that such sections and commentary

... provide useful guidance along with our earlier cases in fashioning the following rule: The provisions of a motor vehicle liability policy will ordinarily be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state has a more significant relationship to the transaction and the parties.

*Id.* at 352–53.

In reaching that conclusion, the Court noted that substantial reasons augment such a rule.

The usual coincidence of the insurance agent, insured, and the risk in the same state dictates that the parties would be more familiar with that state's insurance statutes, which often supplement or control the policy provisions. This law should control the reasonable expectation of the parties, rather than that of another state whose only connection to the dispute is the fortuity that the accident occurred there.

*Id.* at 352.

Such substantial reasons led the West Virginia Supreme Court of Appeals to reach a similar conclusion in *Liberty Mut. v. Triangle Industries*, —— W.Va. ——, 390 S.E.2d 562 (1990). In *Triangle Industries*, the Court was faced with a situation of first impression where "... the policy was issued in New Jersey, while the insured risk[, i.e., processing plant,] was located in West Virginia and the damage[, i.e., release of hazardous substances,] occurred in Ohio." *Triangle Industries*, 390 S.E.2d at 566. The Court also noted that the policies at issue covered insured risks located in numerous other locations.

**2.** The *Perkins* Court noted, however, that "[a]ny contractual defenses [could] be asserted in the subsequent action between the insured and his insurance company." *Perkins*, 350 S.E.2d at 714.

**3.** The Court stated that while the Restatement (Second) Conflicts of Laws § 193 "... gives deference to the 'state which the parties understood was to be the principal location of the insured risk,' subject to the qualification for the substantial contacts test contained in Section 6

of the Restatement.... [and] does not mention as a factor the state where the policy is issued.... [, its commentary points] out that in this type of insurance, the policy will be solicited and issued by a local agent and this will ordinarily coincide with the situs of the insured risk." *Id.* at 352. The Court then noted that in that regard "... the holding of [its] earlier cases that a contract issued by a local agent will be controlled by West Virginia law will be met." *Id.*

After reviewing several of its prior precedents, including *Lee,* and finding none controlling, the Court conducted an independent examination of the Restatement (Second) Conflicts of Laws §§ 193 and 6, and concluded that:

> We believe that "certainty, predictability and uniformity of result," as well as "ease in the determination and application of the law to be applied" is essential to the interpretation of an insurance policy when the law is not otherwise chosen by the parties. Given the increasingly complex nature of the insurance industry, we believe that the needs of the "interstate" system of insurance require that law be applied in the most uniform and predictable manner possible. Although we recognize that, in this case, both West Virginia and Ohio have significant relationships to the transaction, the policy was bargained for, created, and agreed to in New Jersey by both parties. We do not believe the insurance company demonstrated any reasonable expectation at the time the contracts were entered into that any litigation over the policy would be based upon West Virginia law.
>
> Quite simply, we believe that, absent specific provisions to the contrary, it is infinitely more practicable to permit one policy to cover the numerous contracts rather than to require both Triangle and the insurance companies to negotiate individual policies based upon each state where an insured risk is located. When carefully weighed, we conclude that the factors tilt in favor of the law of the place of contract.
>
> Consequently, in a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.

*Id.* at 567.

■ As stated above, in the present case the Schoettker policy was issued in Ohio to the Schoettkers, who were all residents of Ohio, for vehicles registered in Ohio. The Plaintiffs, therefore, do not dispute that the traditional contract conflicts rule is facially applicable nor do they argue that West Virginia has a more significant relationship to the parties and the transaction than Ohio, however, they do contend that an application of Ohio law would violate the public policy of West Virginia.

The particular West Virginia public policy which the Plaintiffs contend would be violated is the State's general tort public policy "... that persons injured by the negligence of another should be able to recover in tort." *Paul v. National Life,* —— W.Va. ——, 352 S.E.2d 550, 556 (1986). This Court agrees, however, with the Defendant's contention that the Plaintiffs' reliance on West Virginia's general tort public policy is misplaced. Unlike *Paul* and cases cited therein, this declaratory judgment action is not based upon a dispute between victim and tortfeasor but rather is based upon a dispute between insured and insurer. And, it must be stressed that the matter at issue in such dispute is one of contractual interpretation, i.e., policy coverage, and not one of tort liability, such as the "John Doe suit" which was at issue in *Perkins.*

When viewed in such light, the general tort public policy of West Virginia simply appears to be irrelevant to the issue at hand. Rather the public policy of West Virginia which would appear most relevant to the issue at hand is that regarding uninsured and underinsured motorist coverage and codified in W.Va.Code § 33-6-31.

W.Va.Code § 33-6-31(b) (1988) provides in pertinent part that:

> ... such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy. "Underinsured

motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either (i) less than limits the insured carried for underinsured motorists' coverage, or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.[4]

The West Virginia Supreme Court of Appeals has stated that such statute reveals that "... the preeminent public policy of this state in uninsured or underinsured motorist cases is that the injured person be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage." *Youler*, 396 S.E.2d at 745. The Court held in *Youler*, in part, that such public policy mandates that "... an insured covered simultaneously by two or more uninsured or underinsured motorist policy endorsements may recover under all of such endorsements up to the aggregated or stacked limits of the same, or up to the amount of the judgment obtained against the uninsured or underinsured motorist, whichever is less, as a result of one accident and injury[,]" that "antistacking" language to the contrary in automobile policies is void, and that an insurer is not entitled to a setoff of liability insurance coverage against underinsured motorist coverage limits. *Id.* at 746, 750–51.

As surmised above, it thus appears that should West Virginia law govern this dispute, the Plaintiffs would likely prevail on their motion for summary judgment. How-

ever, the public policy articulated in W.Va. Code § 33–6–31(b) must be read in conjunction with the other subsections of such statute. W.Va.Code § 33–6–31(a) (1988) provides in relevant part that:

No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, *shall be issued or delivered in this state to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle for which a certificate of title has been issued by the department of motor vehicles of this state*, unless it shall....

(emphasis added). When such subsections are read in conjunction, it is obvious that subsection (b) is merely an extension of subsection (a) providing additional requirements on such policies. It is thus clear that the public policy articulated by the West Virginia Legislature in W.Va.Code § 33–6–31 is limited by its plain language to situations where an automobile insurance policy was issued or delivered in West Virginia to the owner of the vehicle or was issued or delivered by an insurer licensed in West Virginia upon a motor vehicle for which a certificate of title has been issued by the West Virginia Department of Motor Vehicles.

As noted above, the Schoettker policy was issued in Ohio to the Schoettkers, who were all residents of Ohio, for vehicles which were registered in Ohio. The Court thus holds that West Virginia's public policy regarding uninsured and underinsured motorist coverage is not applicable to the dispute at bar. And, obviously, such public policy, where not applicable, cannot be infringed by an application of Ohio law. *See* Syl. pt. 5 *State v. Hall*, 91 W.Va. 648, 114

---

**4.** Prior to the 1988 amendments, W.Va.Code § 33–6–31(b) (1982) did not contain the last sentence quoted above nor the language "without setoff against the insured's policy or any other policy" immediately preceding the definition of "underinsured motor vehicle." The West Virginia Supreme Court of Appeals, however, has recently made it clear that such amendments merely constitute a clarification of the

legislature's original intent to preclude setoffs of liability insurance coverage against underinsured motorist coverage limits. *State Automobile Insurance Co. v. Youler*, 396 S.E.2d 737, 750 (W.Va.1990). It is thus clear that should West Virginia law govern this dispute the Defendant will not be entitled to such a setoff even though the operative facts of this case occurred prior to the effective date of the 1988 amendments.

S.E. 250 (1922) (The State, which was not a creditor or purchaser, could not invoke a statute, which adopted and enforced rules of public policy designed to protect creditors and purchasers, to avoid the construction given to a contract by the law of the state where the contract was made and to be performed); *see also* Restatement (Second) Conflicts of Laws § 6(2)(b) ("the relevant policies of the forum").

It is therefore the determination of this Court that Ohio substantive law, rather than West Virginia substantive law, governs the interpretation of the Schoettker policy.[5] It is accordingly ORDERED that the Plaintiffs' motion for summary judgment is DENIED. It is further ORDERED for reasons stated therein that the Defendant's motion for summary judgment is GRANTED.[6]

IT IS SO ORDERED.

---

**5.** The Defendant has argued that an application of West Virginia substantive law would violate both the Full Faith and Credit Clause and the Due Process Clause. The Plaintiffs have responded by arguing that West Virginia has significant contacts to the parties and transaction which would prevent an application of West Virginia substantive law from being arbitrary and fundamentally unfair. *See Allstate Insurance Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). Because the Court has determined that Ohio law governs this dispute, it needs not determine whether an application of West Virginia substantive law would be constitutionally permissible. The Court does wish to note, however, that even if West Virginia substantive law could be constitutionally applied, such an application would not necessarily be a sound one for choice of law purposes. *See Hague,* 449 U.S. at 324, 101 S.Ct. at 646 (Stevens, J., concurring).

**6.** As noted previously, the Plaintiffs agree that they are not entitled to any underinsured motorist benefits under Ohio substantive law.