**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CAROL C. KIGER, individually;
CAROL C. KIGER, Executrix of the
Estate of Brian F. Kiger,
<u>Plaintiffs-Appellants,</u>

v.

THE CINCINNATI INSURANCE COMPANY;
JOHN DOE,

No. 96-1313

<u>Defendants-Appellees,</u>

and

GENERAL MOTORS CORPORATION, a
Delaware corporation doing
business in the State of West
Virginia,
<u>Defendant.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Chief District Judge.
(CA-93-83-5)

Argued: January 28, 1997

Decided: March 31, 1997

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
HILTON, United States District Judge for the Eastern District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Scott Steven Blass, BORDAS, BORDAS & JIVIDEN, Wheeling, West Virginia, for Appellants. Dara A. DeCourcy, ZIMMER KUNZ, P.C., Pittsburgh, Pennsylvania, for Appellees. **ON BRIEF:** James B. Stoneking, James G. Bordas, Jr., BORDAS, BORDAS & JIVIDEN, Wheeling, West Virginia, for Appellants. George N. Stewart, ZIMMER KUNZ, P.C., Pittsburgh, Pennsylvania, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Carol Kiger (Kiger) sued Cincinnati Insurance Company and an unknown motorist for uninsured motorist coverage under West Virginia Code § 33-6-31. Kiger appeals from district court orders granting the defendants' motion to dismiss. We affirm.

I.

Kiger's husband, Brian Kiger (Mr. Kiger), died in an automobile accident on June 20, 1991, at 2:45 a.m. on Interstate 70 near Wheeling, West Virginia. Mr. Kiger was driving east in the far left lane of three lanes. His car drifted off to the left onto the center median, then returned onto the highway and rolled over several times, crossing the eastbound lanes and coming to rest against the guardrail. Witnesses told police a second car, which was traveling in the center lane, left the scene. The police treated the accident as a "single vehicle accident."

In 1993 Kiger sued General Motors Corporation for product liability, claiming that a product defect in the axle shaft caused Mr. Kiger

2

to lose control of the company car (a 1991 Oldsmobile Bravada) he was driving. In subsequent depositions, witnesses to the accident said that the second car may have run Mr. Kiger's car off the road. In September 1994 Kiger amended her complaint to include as defendants the unknown driver of the second car (John Doe) and Mr. Kiger's insurance company, Cincinnati Insurance Company (Cincinnati). Kiger claimed that John Doe negligently caused the accident and that Cincinnati was liable to her under her husband's policy for uninsured motorist coverage. Kiger ultimately settled her claim with General Motors.

West Virginia Code § 33-6-31 provides for uninsured and underinsured motorist coverage. Motor vehicle insurance policies in West Virginia must contain a provision "undertaking to pay the insured all sums which he shall be entitled to recover as damages from the owner or operator of an uninsured motor vehicle . . . ." <u>See</u> W. Va. Code § 33-6-31(b). Section 33-6-31 also provides that a "motor vehicle shall be deemed to be uninsured if the owner or operator thereof be unknown . . . ." <u>See id.</u> § 33-6-31(c). In accordance with the statute Mr. Kiger's policy provided: "[w]e will pay all sums the `insured' is legally entitled to recover as compensatory damages from the owner or driver of an `uninsured' or `underinsured motor vehicle.'" The policy also provided: "`[u]ninsured motor vehicle' means a land motor vehicle or trailer . . . [w]hich is a hit-and-run vehicle and neither the driver nor owner is identifiable."

In her amended complaint Kiger contends that under Mr. Kiger's policy Cincinnati must pay all sums she is entitled to recover as compensatory damages from John Doe. Cincinnati filed a motion to dismiss in its own right and on behalf of John Doe. In its motion Cincinnati first argued that Kiger cannot sue Cincinnati directly until she obtains a judgment against John Doe. The district court agreed and dismissed the action as to Cincinnati. Cincinnati next argued that the two-year statute of limitations for personal injury actions barred the action against John Doe. Kiger argued in response that the action was a contract dispute with Cincinnati and that the ten-year statute of limitations for contract actions applied. The district court held

that the
John Doe action was a personal injury action and dismissed the case.
We affirm.

3

II.

A.

The district court properly relied on <u>Davis v. Robertson</u>, 332 S.E.2d 819, 826 (W. Va. 1985), to dismiss the direct action against Cincinnati. In <u>Davis</u> the West Virginia Supreme Court held that the West Virginia uninsured motorist coverage statute "does not authorize a direct action against the insurance company providing uninsured motorist coverage until a judgment has been obtained against the uninsured motorist." <u>Id.</u> The <u>Davis</u> court reasoned that the John Doe provisions of the statute, which allow the plaintiff to proceed against a fictional person, would be unnecessary if the insured could directly sue the insurer.

<u>Postlethwait v. Boston Old Colony Ins. Co.</u>, 432 S.E.2d 802, 807 (W. Va. 1993), created a narrow exception to the <u>Davis</u> rule against direct actions. In <u>Postlethwait</u> the tortfeasor was known but was underinsured. The plaintiffs settled with the tortfeasor's insurance company for the full amount of the tortfeasor's liability coverage, and the plaintiffs' insurance company waived its subrogation rights against the tortfeasor. The plaintiffs then sued their own insurance company directly for underinsured motorist coverage. The <u>Postlethwait</u> court held that (1) if the plaintiff has settled with the tortfeasor's liability carrier for the full amount of the policy and (2) if the plaintiff's insurance company has waived its right of subrogation against the tortfeasor, then the plaintiff may bring a direct first-party action against its own insurance company. The court reasoned that the purpose of the <u>Davis</u> rule was to consolidate the liability action against the tortfeasor and the coverage action against the plaintiff's insurance company into one judicial proceeding. In <u>Postlethwait</u> the settlement had already determined the tortfeasor's liability to the plaintiff. And the plaintiff's insurance company had waived its right to subrogation, which eliminated the possibility of a subsequent trial against the tortfeasor. Coverage was the only remaining issue, and "to require the Postlethwaits to take the additional step of getting a judg-

ment against the tortfeasor flies in the face of concepts of judicial
economy." <u>Postlethwait</u>, 432 S.E.2d at 806.

4

The Postlethwait exception does not apply to this case. Judicial economy dictated the Postlethwait exception: if the plaintiff settles with the tortfeasor and the plaintiff's insurance company waives its subrogation rights, then there is no reason to require the plaintiff to obtain a judgment against the tortfeasor. In this case, however, Kiger has not established the liability of the tortfeasor. Nor has Cincinnati waived its subrogation rights. So if Kiger sues Cincinnati directly and wins, Cincinnati could then sue John Doe (if he was found) in a separate judicial proceeding. Section 33-6-31 contemplates a direct action against the tortfeasor only, unless a judicial economy exception applies. No such exception applies to this case. We therefore agree with the district court that Kiger may not maintain a direct action against Cincinnati.*

B.

The district court also properly dismissed the action against John Doe, reasoning that the two-year statute of limitations for personal injury actions applied. See W. Va. Code§ 55-2-12(b). The accident occurred on June 20, 1991. Kiger moved to amend her complaint to sue John Doe on September 28, 1994, more than two years after the date of the accident. The district court held that personal injury liability is the issue in the John Doe action and therefore the two-year limit applies. We agree. West Virginia law treats John Doe actions for uninsured motorist coverage as tort actions. See Perkins v. Doe, 350 S.E.2d 711, 713 (W. Va. 1986) ("The `John Doe' suit initiated by the Perkins is an action in tort.").

Kiger argues that a John Doe suit for uninsured motorist coverage is a contract action subject to a ten-year limit. The first case she relies on is Lee v. Saliga, 373 S.E.2d 345, 349 (W. Va. 1988). West Vir-
_____
*Kiger also argues that she can bring a direct action because she meets the only precondition to suit against Cincinnati--"full compliance" with the terms and conditions of the policy. But the policy limits uninsured motorist claims to the amount which the insured is"legally entitled

to
recover." Until Kiger obtains a judgment against John Doe, she is not
"legally entitled" to recover. <u>See Davis</u>, 332 S.E.2d at 826. Therefore, she
has not met a condition that the policy requires before she can sue Cin-
cinnati for coverage.

5

ginia law requires that in uninsured motorist cases the uninsured vehi-
cle must make physical contact with the insured vehicle. In Lee the court considered whether physical contact was a condition precedent to coverage when the accident occurred in West Virginia but the insured's policy was issued in Pennsylvania. The court found that the question was a dispute over policy coverage between the insured and the insurer rather than a dispute over liability. As such, it was a con-tract question for purposes of conflicts-of-law analysis. Id. The result was that Pennsylvania law applied, and there was no physical contact requirement. The holding in Lee--that the physical contact require-ment is a contract question for conflicts-of-law purposes--does not help Kiger. The Lee court reasoned that it was a contract question because the dispute centered on coverage, not liability. Lee, 373 S.E.2d at 349-50. In this action against John Doe, the question is whether John Doe is liable. It is not a contract dispute over the extent of coverage.

The second case Kiger relies on is Plumley v. May, 434 S.E.2d 406, 411 (W. Va. 1993). In Plumley the court held that a direct action against an uninsured motorist carrier sounds in contract and is gov-erned by the ten-year limitation. The court explicitly distinguished John Doe actions, however. "Obviously, such a `John Doe' action is designed to represent a plaintiff's suit against an actual tortfeasor and therefore sounds in tort." Id. at 410.

The threshold question in the John Doe action is liability. Cincin-nati gets the same protection from the two-year personal injury statute of limitations when it stands in Doe's shoes as the tortfeasor himself would if he appeared. Kiger amended the complaint to name John Doe and Cincinnati in September 1994, more than two years after the June 1991 accident.

The district court also held that Kiger failed to give timely notice to Cincinnati after the accident. See W. Va. Code § 33-6-31(e) (notice must be given within sixty days of accident). Kiger relies on State Auto. Mut. Ins. Co. v. Youler, 396 S.E.2d 737 (W. Va. 1990), to argue that the notice provision does not apply to this case. Because we affirm the district court on the grounds that the John Doe action is

barred by the two-year statute of limitations, we need not reach the
issue of timely notice.

6

III.

In sum, we agree with the district court that Kiger cannot bring a direct action against Cincinnati because Kiger has not obtained a judgment against John Doe. We also agree that the Postlethwait exception does not apply. As to the John Doe action, we agree with the district court that the action is a personal injury action barred by
the two-year statute of limitations. Accordingly, the judgment of the
district court is

AFFIRMED.

7