**Joseph A. MUNN, Plaintiff,**

**v.**

**PFIZER HOSPITAL PRODUCTS GROUP, INC., Defendant.**

**Civ. A. No. C90–0037–L(J).**

United States District Court,
W.D. Kentucky,
Louisville Division.

Oct. 17, 1990.

Michael Lawrence, Greenbaum Boone Trietz Maggiolo Reisz & Brown, Louisville, Ky., for plaintiff.

W. Kennedy Simpson, Stites & Harbison, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

JOHNSTONE, District Judge.

This products liability action is before the court on motion of defendant, Pfizer Hospital Products Group, Inc., for summary judgment pursuant to FED.R.CIV.P. 56.

## I. BACKGROUND

Munn fractured his right femur in a motorcycle accident on June 6, 1987. On June 9, 1987, Eugene Jacob, M.D. surgically implanted a Grosse & Kempf femoral intramedullary locking nail into Munn's femur. The nail was manufactured by Pfizer who, on July 23, 1985, sold the nail to Mitchell Orthopaedics.

In September, 1987 Munn began experiencing pain in his right leg. On September 10, 1987, x-rays revealed that the nail had either fractured or that a fracture was imminent. Munn states that, at that time, he suspected that the nail was "defective or something". On September 15, 1987, Dr. Jacob removed the nail inserting a second Grosse & Kempf nail into Munn's femur. This second nail was also manufactured by Pfizer and sold to Mitchell Orthopaedics on July 24, 1985.

In December, 1988, fifteen months after the second nail was implanted, Munn began experiencing pain similar to that which he had experienced in September, 1987 and states that he thought the second nail may have fractured. On January 17, 1989, Munn met with Dr. Jacob who confirmed that the second nail had in fact fractured. In February, 1989, the second nail was removed and a third Grosse & Kempf nail surgically implanted.

Munn filed this lawsuit on January 3, 1990 to recover damages from Pfizer under claims of negligence, strict liability and breach of warranty. Pfizer moves for summary judgment on each claim on the grounds that they are time barred. Specifically, Pfizer argues that Munn's strict liability and negligence claims are barred by the one year limitations period set forth in K.R.S. 413.140(1)(a). In this regard, Pfizer directs the court to Munn's deposition in which he admits that he suspected, in September, 1987, that the first nail was "defective" and suspected in December, 1988 that the second nail may have cracked. In addition, Pfizer argues that Munn's breach of warranty claim is barred by the four year limitations provision set forth in K.R.S. 355.2–725 which period, according to Pfizer, began to run on the date the nails were sold to its distributor. Pfizer also argues that Munn lacks standing to pursue this contractual claim due to the absence of privity of contract.

Munn argues that his unconfirmed suspicions of a defect are insufficient to began

the one year limitations period for filing his strict liability and negligence claims. Munn asserts that he was never informed that either nail was defective, that Dr. Jacob informed him in September, 1987 that the first nail had cracked and would be returned to the manufacturer for analysis, that Dr. Jacob never informed him of any response received from Pfizer concerning the analysis performed on the first nail, and that he did not prior to January 17, 1989 know that the second nail had fractured. As to the breach of warranty claim, Munn argues that the limitations period begins to run on the date the nails were implanted and argues that Pfizer's privity argument fails to defeat his right to pursue this theory of recovery.

The parties have filed through briefs regarding these issues and the matter is now before the court for consideration.

## II. STRICT LIABILITY AND NEGLIGENCE

The issue which the court must resolve at this juncture is whether, under the discovery rule as adopted in Kentucky, Munn's strict liability and negligence claims are barred as a matter of law. Although the parties agree that the resolution of this issue involves the application of K.R.S. 413.140(1)(a) in conjunction with the Kentucky discovery rule adopted in *Louisville Trust Co., v. Johns–Manville Products, Inc.*, Ky., 580 S.W.2d 497 (1979), they reach opposite conclusions as to the result which must follow the proper application of this authority.

In *Louisville Trust*, the Supreme Court of Kentucky applied a discovery rule to limitations periods governing products liability actions in Kentucky. In so doing, the Court quoted the following passage from the opinion of the New Hampshire Supreme Court in *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170 (1977):

We believe that the proper formulation of the rule and the one that will cause the least confusion is the one adopted by the majority of the courts: A cause of action will not accrue under the discovery rule until the plaintiff discovers

or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury *may* have been caused by the defendant's conduct. *(emphasis added)*.

With regard to this holding, the *Louisville Trust* court stated "[w]e think that declaration is a workable and just application of our *Tomlinson* rule". Accordingly, it is this rule of law which must be applied to Pfizer's timeliness argument.

## A. FIRST GROSSE & KEMPF NAIL

■ Applying the law of Kentucky, in September, 1987, Munn knew or should have known that the injuries resulting from the alleged defect in the first nail had been incurred and that such injuries may have been caused by Pfizer's conduct. This conclusion is based on the following statements made by Munn in his deposition:

Q. At the time in September of 1987 that Dr. Jacob told you that the rod had cracked, did you think that there was some kind of defect or problem with the rod at the time?

A. Yes. I believed there probably was.

Q. ... what did you think was wrong with the rod other than the fact that it had broken. Did you know anything more about it than that?

A. No. I just figured it was a defective rod or something.

Q. And you thought that back in September of 1987. Is that right?

A. Yeah. I believe so.

Munn was informed by Dr. Jacob in September, 1987 that the first nail had cracked and admits that he suspected that the crack was the result of a defect. These admissions, coupled with Munn's knowledge that the first nail had in fact cracked are, pursuant to the holding in *Louisville Trust Co.*, sufficient to began the one year time period for claims based upon strict liability and negligence due to an alleged defect in the first nail. Having filed his cause of action on January 3, 1990, Munn's strict liability and negligence claims against Pfizer for injuries sustained due to an alleged defect in the first nail are barred.

## B. SECOND GROSSE & KEMPF NAIL

Munn testified that approximately fifteen months after the first nail fractured and the second nail was implanted, he experienced pain in his right leg similar to the type of pain which he had experienced when the first nail had cracked. In this regard, Munn stated:

Q. And I think you told me when your leg started hurting then you thought that the nail may have cracked again?

A. Yes.

Q. Okay. So it would have been sometime in December of 1988 that you thought that the nail might have cracked again?

A. Yes.

Munn admits that thirteen months prior to filing this lawsuit, he suspected that the second nail may have fractured. Unlike the events surrounding the first nail, however, Munn did not know—for a period in excess of twelve months prior to the filing of this lawsuit—that the second nail had fractured. Such knowledge was gained on January 17, 1989 when Dr. Jacob informed Munn that the second nail had fractured.

Munn's unconfirmed suspicions in December, 1988 do not, as a matter of law, lead to the conclusion that his strict liability and negligence claims based upon an alleged defect in the second nail accrued at that time. Rather, genuine issues of fact exist as to whether Munn had, in December, 1988, discovered or in the exercise of reasonable diligence should have discovered that he was injured and that his injury may have been caused by a defect in the second nail. These issues should be resolved by the trier of fact. Accordingly, Pfizer is not entitled to judgment as a matter of law on the issue of liability, under theories of strict liability and negligence, for an alleged defect in the second nail.

## III. BREACH OF WARRANTY

 In addition to his strict liability and negligence claims, Munn seeks damages for Pfizer's alleged breach of warranty. Pfizer argues that this claim is time barred under the four year limitations period set forth in K.R.S. 355.2–725(1) and is otherwise barred due to a lack of privity. In support of its timeliness argument, Pfizer contends (1) that a cause of action for breach of warranty accrues on the date tender of delivery is made and (2) tender of delivery for the first and second nails occurred on July 23 and 24, 1985—the dates on which Pfizer sold the nails to Mitchell Orthopaedics. In addition, Pfizer contests Munn's standing to pursue a breach of warranty claim due to the absence of privity of contract between Munn and Pfizer.

Munn argues that the four year limitations period began on the date each nail was implanted in his leg, not on the dates Pfizer sold the nails to Mitchell Orthopedics. Further, Munn contends that privity of contract exists between the parties since the nails were sold by Pfizer to Mitchell Orthopedics and then directly to him.

In order to reach the issue of "tender of delivery", under K.R.S. 355.2–725, the court must first determine whether Munn was in privity of contract with Pfizer. If privity of contract is absent, Munn may be barred from pursuing this theory of recovery. Resolution of this issue must be based upon the case and statutory law of the Commonwealth of Kentucky.

In *Williams v. Fulmer*, Ky., 695 S.W.2d 411 (1985), the Supreme Court of Kentucky stated:

If liability is based on sale of the product, it can be extended beyond those persons in privity of contract only by some provision of the U.C.C. as adopted in Kentucky. The only provision of the U.C.C. extending breach of warranty in injury cases is K.R.S. 355.2–318....

Alternative A to 1972 version of the Uniform Commercial Code's section 2–318 has been adopted by the Kentucky legislature. This alternative, set forth in K.R.S. 355.2–318, provides:

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the

**248**

goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

K.R.S. 355.2–318 extends breach of warranty standing to those in horizontal privity with a purchaser. The issue before the court, however, is whether Munn, having purchased the nails from a commercial distributor (or the hospital) as opposed to the manufacturer is, nonetheless, in privity with the manufacturer.

The court has been unable to find a decision of the Kentucky courts which specifically addresses this issue. The fact that Kentucky's commercial code does not expressly extend breach of warranty standing beyond the buyer/seller setting is, however, dispositive. There is simply no privity of contract between Munn and Pfizer. This court, following the holding in *Williams v. Fulmer, supra,* cannot, in the absence of such privity, extend standing to pursue a breach of warranty action to Munn. Accordingly, Pfizer is entitled to summary judgment on Munn's breach of warranty claim.