482 S.E.2d 659

**Lucia BLAIS, Plaintiff Below, Appellant,**

v.

**ALLIED EXTERMINATING COMPANY, et al., Defendants Below, Appellees.**

No. 23160.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1996.

Decided Dec. 13, 1996.

Travers R. Harrington, Jr., Jesser & Harrington Fayetteville, West Virginia and Eliot Norman, John B. Farmer, Thompson & McMullan Richmond, VA, for Plaintiff below Appellant.

Josef A. Horter, Andrew J. Goodwin, Goodwin & Horter, Charleston, for Defendants below Appellees.

RECHT, Judge: [1]

The plaintiff below, Lucia Blais (hereinafter "appellant"), appeals an order entered by the Circuit Court of Fayette County entered on January 25, 1995, granting summary judgment to Allied Exterminating Company, et al. (hereinafter "Allied Exterminating" or "appellee").[2] The circuit court ruled that appellants' case is barred by the applicable statute of limitations. The appellant contends on appeal that the Doctrine of Equitable Estoppel precludes the appellee from asserting the statute of limitations as a defense in this case.[3]

## I.

## FACTS

In June of 1987, the appellant and her husband resided in Page County, Virginia in a residential dwelling that was infested with carpenter ants. In an effort to exterminate the ants, the appellant contacted the Waynesboro, Virginia office of Allied Exterminating[4] and requested the application of the appropriate treatment. On June 16, 1987, Allied Exterminating came to the Blais home and sprayed the house with insecticides. The appellant alleges that the inspector for Allied Exterminating persuaded the Blaises additionally to treat their home for roaches, termites and silverfish. The appellant further alleges that her home, which is only 480 square feet, was sprayed throughout that entire day and at the end of the day, the walls were dripping with insecticides. The appellant maintains that she expressed concern over the safety of the insecticides twice during that day, but she was told by the workers applying the insecticide that the insecticides were safe enough to drink, which assuaged her concerns.

The appellant contends that the fumes from the insecticides were so powerful that she and her husband decided to sleep elsewhere on the evening of the spraying and then return the next day. The appellant alleges in her complaint that several days after the application of the insecticides, William K. Ervin, an inspector for Allied Exterminating and a defendant in this civil action, came to the Blais property for recreational purposes (to go hunting) and observed the property. The appellant alleges that the property had a strong insecticide odor at that time, and that the inspector observed sufficient facts to make it obvious that it was unsafe for the Blaises to remain in the house. The complaint further alleges that although the inspector became nervous after observing the property, he did not provide the Blaises with any warnings or information about the insecticides; and, in fact, he rejected any suggestion by the plaintiff that there could be some negative effect from the insecticides.

The appellant alleges that she suffered medical complications as a result of her exposure to insecticides. Ms. Blais began to suffer from certain ailments, including episodes of diaphoresis (profuse sweating) and peripheral neuropathy (inflammation and de-

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. Paul G. McKinney, Macon Coleman, IV, and William K. Ervin were also named as defendants in this case.

3. Appellant filed a motion to amend or alter judgment under West Virginia Rule of Civil Procedure 59(e) (1978), which was denied. The appellant appeals from that final order. When the Petition for Appeal was granted, we limited the appeal to the single issue of whether the Doctrine of Equitable Estoppel precludes the appellee from asserting the statute of limitations as a defense.

4. Allied Exterminating Company has its principal place of business in Fayette County, West Virginia.

generation of peripheral nerves sometimes associated with lead poisoning). After visiting various doctors, the appellant was diagnosed with a condition known as thyroiditis (inflammation of the thyroid gland) and diabetes. Significantly, none of the appellant's physicians diagnosed her symptoms as insecticide poisoning. In September of 1991, the appellant was examined by Dr. David S. Klein, who informed the appellant for the first time that her symptoms were a result of a condition known as organophosphate poisoning caused by excessive exposure to insecticides. The appellant represented to Dr. Klein that she began having symptomatology (primarily the diaphoresis) approximately one year after the application of the insecticides at her home, which would be the summer of 1988.[5]

The appellant instituted this civil action in the Circuit Court of Fayette County in October, 1992. The circuit court granted the defendant's motion for summary judgment by virtue of applying the Virginia statute of limitations which is two years after the manifestation of the injuries or, as the circuit court found, in the summer of 1990. *See* Va.Code Ann. § 8.01–243 (1987).[6] The circuit court applied the law of the Commonwealth of Virginia relating to the statute of limitations and the absence of the discovery rule by virtue of the application of the West Virginia borrowing statute, W. Va.Code 55–2A–1 (1959), which requires the application of the statute of limitations of the state which would bar the claim, in this case, Virginia.

The appellant argued in the lower court that the appellee should not be heard even to apply the statute of limitations as a defense in this claim by virtue of the application of the Doctrine of Equitable Estoppel. The appellant informed the lower court that the Doctrine of Equitable Estoppel is appropriate in this case because the conduct of the appellee was such that the appellant was prevented from appreciating the dangerous

**5.** A review of the medical history reveals:

| | |
|---|---|
| November, 1987 to March, 1988 | The appellant began to see Dr. Overby, who first diagnosed the appellant's condition as thyroiditis, and found that appellant had episodes of diaphoresis. |
| Dec. 17, 1987 | Dr. Sheap, a specialist in dermatology, began seeing appellant and in October, 1990, noted that the appellant was consistent with Type II diabetes mellitus. Dr. Sheap noticed that the appellant had whitish streaks in her thumbnails and tested her for arsenic, but levels were normal. |
| Summer, 1988 | Plaintiff represented to her Dr. Klein in the fall of 1991 that she began having problems about one year after the spraying of the insecticides. This is the time that the circuit court found triggered the period of limitation. |
| Summer, 1990 | The circuit court determined that the summer of 1990 was when the statute of limitations expired. |
| September, 1991 | Appellant saw Dr. Sheap for treatment of a scalp disorder, and she complained of neuropathy, stating that her husband suffered from it as well. Dr. Sheap learned of the insecticide spraying, and recommended the Blaises visit Dr. Klein. Dr. Sheap does not have a professional opinion about whether or not Ms. Blais was chemically poisoned. |
| September, 1991 | Dr. Klein, a physician at a pain management clinic (Dr. Klein was a pesticide chemist for the EPA before he went to medical school) saw the appellant beginning in September, 1991. He first believed that the appellant may have suffered injury as a result of insecticide poisoning of Chlordane, but later determined that the chemical was Dursban. (The appellant's husband also tested positive for this chemical.) |
| October 10, 1991 & May, 1992 | At some point, Dr. Overby determined that Appellant suffered from peripheral neuropathy as a result of diabetes mellitus. At his deposition, Dr. Overby testified that he did not think Appellant was chemically poisoned, nor that she exhibited symptoms of chemical poisoning. |
| October 15, 1992 | The appellant filed her complaint. |

**6.** Va.Code Ann. § 8.01–243 (1987) provides, in pertinent part, "every action for personal injuries, whatever the theory of recovery … shall be brought within two years after the cause of action accrues."

properties of the insecticides so that when she began to feel poorly, she did not have a hint that the cause of her maladies were associated with insecticides that were "safe enough to drink." The appellant's principal contention before this court is that the circuit court did not consider, let alone apply the Doctrine of Equitable Estoppel to the facts of this case. Because we determine that the circuit court should have, at the very least, considered the factual and legal arguments supporting the appellant's theory, which very well may resuscitate the dismissed cause of action, we are required to reverse this case and remand for further proceedings.

## II.

## DISCUSSION

■ The appellant chose to file her civil action in West Virginia based upon a cause of action that arose in the Commonwealth of Virginia. This division of the forum where the case is decided and the location where the cause of action occurred implicates the application of the Conflicts of Law Doctrine *lex loci delicti*, which requires the forum state (West Virginia) to apply the substantive law of the state where the cause of action arose (Virginia).

In an action prosecuted in this State for recovery of damages for a personal injury received in a foreign jurisdiction, the substantive law of the foreign jurisdiction controls the right of recovery, but the adjective law of this state is applied and controls as to the remedy.

Syllabus Point 1, *Tice v. E.I. du Pont De Nemours & Co.*, 144 W.Va. 24, 106 S.E.2d 107 (1958).

*Lex loci delicti* is the cornerstone of West Virginia's Conflict of Laws Doctrine, which was reaffirmed in Syllabus Point 1, *Paul v. National Life*, 177 W.Va. 427, 352 S.E.2d 550 (1986) as: "In general, this State adheres to the conflicts of law doctrine of *lex loci delicti*."

■ We, therefore, must address a threshold inquiry of whether the Doctrine of Equitable Estoppel is governed by the substantive law of the Commonwealth of Virginia or the adjective law of West Virginia. We hold that the Doctrine of Equitable Estoppel is a rule of substantive law. *See* John Norton Pomeroy, *Equity Jurisprudence*, pt. II, ch. II, sec. IX, § 801–804, pp. 176–189 (1941); *see also Keown v. West Jersey Title & Guaranty Co.*, 147 N.J.Super. 427, 443–445, 371 A.2d 370, 379–380 (1977), *rev'd on other grounds*, 161 N.J.Super. 19, 390 A.2d 715, *cert. denied* 78 N.J. 405, 396 A.2d 592 (1978); *Olsen–Frankman Livestock Marketing Serv., Inc. v. Citizens National Bank*, 4 B.R. 809, 811 (D.C.Minn.1980)("Equitable estoppel is a rule of substantive law"); *Frye v. Anderson*, 248 Minn. 478, 492–495, 80 N.W.2d 593, 603–604 (Minn.1957).

■ Under Virginia law, equitable estoppel is the doctrine by which a party is prevented by his own acts from claiming a right to the detriment of the other party who was entitled to rely on such conduct and has acted accordingly. *See American Mutual Liability Ins. Co. v. Hamilton*, 145 Va. 391, 135 S.E. 21 (1926). The elements necessary to establish equitable estoppel under the law of Virginia are: "(1) a representation; (2) reliance; (3) change of position; and (4) detriment, and the party who relies upon estoppel must prove each element by clear, precise, and unequivocal evidence. Because the doctrine of estoppel prevents the showing of the truth, it is applied rarely and only from necessity. (Citations omitted.)" *Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust*, 243 Va. 53, 59, 413 S.E.2d 599, 603 (1992). (Citations omitted.) Specifically in *American Liability Ins. Co. v. Hamilton*, the Virginia Supreme Court recognized estoppel that is a defense to the assertion of the statute of limitations when one by his acts, through representations or admissions, or by his silence or through culpable negligence, induces another to believe certain facts to exist, and such other rightfully relies and acts upon such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

■ When we extrapolate the standards of equitable estoppel as formulated by the Virginia courts to the appellant's contention, it is apparent that the circuit court should consider the appellee's alleged misrepresentations concerning the safety of the insecticides, and the appellant's reliance upon those misrepresentations, when she was considering the

causes of her various illnesses, to determine whether or not there is a fit between the factual contentions of the appellant as it relates to the application of the Doctrine of Equitable Estoppel under Virginia law.

■ Because the trial court did not consider any aspect of the equitable estoppel argument, we have no other choice than to remand this case so that a full and correct legal determination can be made in regard to the application of the Doctrine of Equitable Estoppel to the facts of this case based upon a full and adequate record. "When the record in an action or suit is such that an appellate court can not in justice determine the judgment that should be finally rendered, the case should be remanded to the trial court for further development." Syllabus Point 2, *South Side Lumber Co. v. Stone Construction Co.,* 151 W.Va. 439, 152 S.E.2d 721 (1967). *See also* Syllabus Point 2, *Higginbotham v. Higginbotham,* 189 W.Va. 519, 432 S.E.2d 789 (1993); *Heydinger v. Adkins,* 178 W.Va. 463, 360 S.E.2d 240 (1987); Syllabus, *Wells v. City of Fairmont,* 173 W.Va. 519, 318 S.E.2d 463 (1984); Syllabus Point 1, *White v. Bordenkircher,* 169 W.Va. 239, 286 S.E.2d 686 (1982).

Reversed and remanded.