487 S.E.2d 913

**Charles McKINNEY and Sandra K. McKinney, Plaintiffs Below, Appellants,**

v.

**FAIRCHILD INTERNATIONAL, INC., Defendant Below, Appellee.**

No. 23467.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1997.

Decided May 14, 1997.

---

Jeffery T. Jones, Kessler & Jones, Charleston, for Appellants.

Clem C. Trischler, Pietragallo, Bosick & Gordon, Pittsburgh, PA, for Appellee.

STARCHER, Justice:

The legal question presented in this appeal concerns whether the Kentucky or the West Virginia savings statute applies when a second action is filed in a West Virginia circuit court after the original action, which was timely filed in a federal court located in West Virginia, was dismissed. The Circuit Court of Raleigh County, by summary judgment, dismissed the complaint of Charles and Sandra K. McKinney against Fairchild International, Inc. ("Fairchild") based on its findings that the complaint was filed in the circuit court beyond Kentucky's one-year statute of limitation and that no provision of Kentucky law applied to toll or save the cause of action.

On appeal, the McKinneys argue that the circuit court should have applied West Virginia law to toll or save the cause of action. Although the shorter period of limitation is applicable in this State to the original filing of an action accruing outside this State, we find that West Virginia law should have been applied in this case to determine if a new claim filed in this State after the dismissal of the original claim was commenced within due time. We also find that the circuit court correctly determined that the Kentucky discovery rule was not applicable in these circumstances. Because we hold that the circuit court correctly applied the Kentucky discovery rule but erred in applying the Kentucky tolling provisions, we affirm, in part, and reverse, in part, the decision of the circuit court and remand this case for additional proceedings.

## I.

### Facts and Background

The facts relating to the legal question before this Court are not in dispute. The complaint is based on the injury Mr. McKinney received on April 22, 1993 while he was working at a mining facility in Knott County, Kentucky. The machine that Mr. McKinney was using at the time of his accident was manufactured by Fairchild, a West Virginia corporation. On November 15, 1993, counsel for the McKinneys received an Abstract of Investigation—U.S. Department of Labor, Mine Safety & Health Administration stating, "[t]he accident and injuries were the results of an inadequate deenergization device." Mr. and Mrs. McKinney are residents of Boone County, West Virginia.

Seeking recovery for the injuries suffered in the accident, the McKinneys filed a civil action on April 15, 1994 against Fairchild in the United States District Court for the Southern District of West Virginia (the "federal court litigation"). The federal court litigation was dismissed by order entered on October 26, 1994 for lack of subject matter jurisdiction.

On October 31, 1994, the McKinneys filed the present suit in the Circuit Court of Raleigh County, West Virginia.[1] On July 11, 1995, Fairchild filed a motion for summary judgment alleging that the claims raised by the McKinneys were barred by Kentucky's one-year statute of limitation, which was not tolled under Kentucky law. The McKinneys responded by maintaining that either the West Virginia savings statute, *W.Va.Code*, 55–2–18 [1985], or the Kentucky discovery rule should be applied to toll or extend the statute of limitation. After a hearing, the circuit court on September 15, 1995 granted Fairchild partial summary judgment dismissing the McKinneys' strict liability and negligence claims. By order entered on November 20, 1995, the circuit court finding that the Kentucky, not the West Virginia, savings statute applied and that the Kentucky discov-

---

**1.** On November 2, 1994, the McKinneys also filed another suit against Fairchild in the Circuit Court of Knott County, Kentucky. According to the parties' briefs, the Kentucky litigation was voluntarily dismissed without prejudice on April 13, 1995. The record before this Court is limited to the Raleigh County litigation.

ery rule did not extend the statute of limitation, dismissed the McKinneys' suit.

Thereafter, the McKinneys appealed to this Court alleging: first, that the circuit court erred in not applying the West Virginia savings statute; and second, that the circuit court erred in failing to recognize that the statute of limitation was extended by the application of the Kentucky discovery rule.

## II.

### Discussion

#### A.

### Standard of Review

■ Because this appeal of a summary judgment order presents purely legal questions, we apply a *de novo* review. Syllabus Point 1 of *Chrystal R.M. v. Charlie A.L.* 194 W.Va. 138, 459 S.E.2d 415 (1995) states:

Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.

This same standard applies to a summary judgment. "A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We note that Rule 56 of the *West Virginia Rules of Civil Procedure* is " 'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,' if there essentially 'is not real dispute as to salient facts' or if it only involves a question of law." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 58, 459 S.E.2d 329, 335 (1995), *quoting, Painter, supra*, 192 W.Va. at 192 n. 5, 451 S.E.2d at 758 n. 5, *quoting, Oakes v. Monongahela Power Co.*, 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974).

Guided by these principles, we examine the circuit court's grant of summary judgment.

#### B.

### Extension of Statute of Limitation

On appeal, the McKinneys maintain that although *W.Va.Code*, 55–2A–2 [1959] requires the application of the shorter period of limitation to a claim that accrued outside this State when that claim is originally filed in this State, the courts of this State are not required to apply another state's extension or tolling statute to determine timeliness for a second suit asserting the same cause of action after dismissal of the original timely filed action.

■ *W.Va.Code*, 55–2A–2 [1959] borrows the shorter period of limitation for a claim accruing outside this State by stating:

The period of limitation applicable to a claim accruing outside of this State shall be either that prescribed by the law of the place where the claim accrued or by the law of this State, whichever bars the claim.

When a claim accruing outside West Virginia is originally filed in West Virginia, *W.Va. Code*, 55–2A–2 [1959] requires that the shorter period of limitation, either from West Virginia or from the place where the claim accrued, governs such action. Syllabus Point 2 of *Hayes v. Roberts & Schaefer Co.*, 192 W.Va. 368, 452 S.E.2d 459 (1994) (*W.Va.Code*, 55–2A–2 [1959] requires the application of Kentucky's one-year statute of limitation to a claim accruing in Kentucky, rather than West Virginia's two-year statute of limitation) states:

*W.Va.Code*, 55–2A–2 [1959] provides that "[t]he period of limitation applicable to a claim accruing outside of [West Virginia] shall be either that prescribed by the law of the place where the claim accrued or by the law of [West Virginia], whichever bars the claim."

*See Nellas v. Loucas*, 156 W.Va. 77, 191 S.E.2d 160 (1972).

The parties agree that Kentucky, where the claim accrued in this case, has a one-year statute of limitation and that West Virginia has a two-year statute of limitation for personal injury claims.[2] The parties also agree

---

2. *Ky.Rev.Stat.Ann.* 413.140(1) [1974] provides, in pertinent part:

The following actions shall be commenced within one (1) year after the cause of action accrued:

that under *W.Va.Code,* 55–2A–2 [1959], the Kentucky or the shorter statute of limitation applies to the original filing in West Virginia of a suit pertaining to a claim accruing outside West Virginia. In this case, the McKinneys timely, less than one year after the accident, filed suit in a federal court sitting in West Virginia. About six months later, the federal court dismissed the McKinneys' complaint, and the McKinneys shortly thereafter filed a second suit in the Raleigh County Circuit Court. The timeliness question *sub judice* relates to the Raleigh County suit.

Both West Virginia and Kentucky have statutes extending the filing period for a new action after the dismissal of an action commenced timely.[3] West Virginia's savings statute provides for a one-year extension of the applicable statute of limitation for instituting a second action when the original timely filed action is terminated during pendency upon a ground not addressing the merits. *W.Va.Code,* 55–2–18 [1985], our savings statute, provides:

> If any action or suit, including an action for wrongful death, commenced within due time, in the name of or against one or more plaintiffs or defendants, abate as to one of them by the return of no inhabitant, or by his or her death or marriage, or if, in an action or suit, including an action for wrongful death, commenced within due time, judgment or decree (or other and further proceedings) for the plaintiffs should be arrested or reversed on a ground which does not preclude a new action or suit for the same cause, or if there be occasion to bring a new action or suit by reason of such cause having been dismissed for want of security for costs, or by reason of any other cause which could not be plead in bar of an action or suit, or

(a) An action for an injury to the person of the plaintiff, or her husband, his wife, child, ward, apprentice or servant.
*W.Va.Code,* 55–2–12 [1959] provides, in pertinent part:
Every personal action for which no limitation is otherwise prescribed shall be brought: ... (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries....

**3.** Statutes extending the time for suing originate from "journeys account," which was an English

of the loss or destruction of any of the papers or records in a former action or suit which was in due time; in every such case, notwithstanding the expiration of the time within which a new action or suit must otherwise have been brought, the same may be brought within one year after such abatement, dismissal or other cause, or after such arrest or reversal of judgment or decree, or such loss or destruction, but not after. The provisions of this section shall not apply to actions brought for the death of any person occurring prior to the first day of July, one thousand nine hundred eighty-two.

*See Keener v. Reynolds Transp. Co.,* 134 W.Va. 712, 61 S.E.2d 629 (1950) (liberal or broad construction given to statute to save the second action where dismissal of first action included within statute); *McClung v. Tieche,* 126 W.Va. 575, 29 S.E.2d 250 (1944) (because of the statute's purpose and remedial character, it should be broadly construed).

Kentucky's savings statute predicates any extension upon the filing of the original action in the State of Kentucky. *Ky.Rev.Stat. Ann.* 413.270 [1958], the Kentucky savings statute, provides:

> (1) If an action is commenced in due time and in good faith *in any court of this state* and the defendants or any of them make defense, and it is adjudged that the court has no jurisdiction of the action, the plaintiff or his representative may, within ninety (90) days from the time of that judgment, commence a new action in the proper court. The time between the commencement of the first and last action shall not be counted in applying any statute of limitation.

writ permitting a plaintiff to sue within a reasonable time after an abatement, without his fault, of the first writ. "This time was computed with reference to the number of days which the plaintiff must spend in *journeying* to reach the court; hence the name of *journeys account,* that is, journeys *accomptes* or counted." *Black's Law Dictionary* 840 (6th ed.1990). According to 51 *Am.Jur.E.2d Limitation of Actions* § 302 (1970), these savings statutes "are founded upon the statute of 21 James I, ch 16, § 4, although they differ to some extent in terms."

(2) As used in the section, "court" means all courts, commissions, and boards which are judicial or quasi-judicial tribunals authorized by the Constitution or the statutes of the Commonwealth of Kentucky or of the United States of America. (emphasis added).

*See Blair v. Peabody Coal Co.,* 909 S.W.2d 337 (Ky.App.1995)("any court of this state" includes only those federal and state courts physically located within the state of Kentucky).

In this case, if the West Virginia savings statute is applicable then the Raleigh County suit may be timely filed, which would preclude dismissal [4]; but, if the Kentucky savings statute is applicable then the Raleigh County suit is untimely and, absent another tolling mechanism, was correctly dismissed. Both parties maintain that the language of the borrowing statute, *W.Va.Code,* 55–2A–2 [1959] and the weight of authority from other jurisdictions support their competing conclusions.

The statutory language of *W.Va.Code,* 55–2A–2 [1959] provides limited guidance because the meaning of the phrase "period of limitation" is not clear. *See supra* this section for complete text of *W.Va.Code,* 55–2A–2 [1959]. According to Webster's, "period" is singular and its meanings include "a series of events, or a single action." [5] If "period" means a series, then all of the other state's limitations are borrowed, but if "period" means a single action, then only the appropriate statute of limitation is borrowed. The statute's use of the singular of "limitation," along with the use of the singular verb "bars," indicates that only the appropriate statute of limitation is borrowed and not its accouterments. But, Fairchild argues that the addition of the phrase "whichever bars the claim" signals that all of another state's limitations, including tolling provisions, must be borrowed.

▮ One of our traditional rules of statutory interpretation requiring us to "harmonize"

a statute to effectuate the general purpose and design of the existing law was stated in Syllabus Point 5 of *State v. Snyder,* 64 W.Va. 659, 63 S.E. 385 (1908):

A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

*In accord* Syllabus Point 3, *Shell v. Bechtold,* 175 W.Va. 792, 338 S.E.2d 393 (1985); Syllabus Point 1, *State v. White,* 188 W.Va. 534, 425 S.E.2d 210 (1992); Syllabus Point 7, *State ex rel. Goff v. Merrifield,* 191 W.Va. 473, 446 S.E.2d 695 (1994). We recently applied this rule of statutory construction in Syllabus Point 1 of *Hayes,* which is our most recent discussion of *W.Va.Code,* 55–2A–2 [1959], our borrowing statute.

We are faced with two West Virginia statutes with very different purposes—*W.Va. Code,* 55–2A–2 [1959], which "clearly favors the extinguishment of the claim" (*Hayes,* 192 W.Va. at 371, 452 S.E.2d at 462) and *W.Va. Code,* 55–2–18 [1985], which favors extending the statute of limitations for a second suit in specific circumstances, when the original action is timely filed. We begin our consideration of our general system of law by reviewing the role of our borrowing statute. Because the language of the statute, *W.Va. Code,* 55–2A–2 [1959], is not clear on the extent of borrowing of another state's law, we find a consideration of the circumstances of the adoption and continuation of our borrowing statute helpful.

Our borrowing statute, which was adopted in 1959, is based on and is almost identical to the *"Uniform Statute of Limitation on For-*

---

**4.** Because the circuit court did not address the application of the West Virginia savings statute to the timeliness question, we decline to address whether the West Virginia savings statute as a matter of law precludes dismissing the action.

**5.** *Webster's Third New International Dictionary of the English Language Unabridged* 1680 (1970).

*eign Claims Act,*" which was approved by the uniform law committee in 1957. *See W.Va. Code,* 55–2A–5 [1959]. According to the Prefatory Note, for the *Uniform Conflict of Laws—Limitation Act,* 12 *U.L.A.* 156 (1996), the *Uniform Statute of Limitation on Foreign Claims Act* (the West Virginia borrowing statute) "achieved no general adoption, and was officially withdrawn in 1978" in part because of "its abrupt harshness." In 1982, the National Conference of Commissioners on Uniform State Laws approved the *Uniform Conflict of Laws—Limitation Act,* which attempted to address some of the problems arising from the previous uniform borrowing act. One of the provisions of the 1982 uniform law clarifies what is borrowed by providing:

> If the statute of limitation of another state applies to the assertion of a claim in this State, the other state's relevant statutes and *other rules of law governing tolling and accrual apply in computing the limitation period,* but its statutes and other rules of law governing conflict of laws do not apply. (emphasis added).

*Uniform Conflict of Laws—Limitation Act* § 3.[6]

However, our borrowing statute, unlike the subsequent uniform borrowing act, does not specifically provide for the borrowing of another state's tolling provisions. This omission indicates that our borrowing statute borrows only the period of limitation necessary to determine the timeliness of a claim when it is originally filed.

Fairchild argues that most jurisdictions borrow both the other state's applicable statute of limitation and its tolling provisions.[7] In its brief, Fairchild cites to several other jurisdictions, including Ohio[8], Delaware[9], Michigan[10], New York[11] and Missouri.[12] Although each of these jurisdictions borrows both the statute of limitation and tolling provisions, none of these jurisdictions has the

**6.** Section 4 of the 1982 uniform act provides an escape clause allowing application of the forum state's limitation period for extreme cases in order to afford "a fair opportunity to sue upon or [to avoid imposing] ... an unfair burden in defending against, the claim...."

**7.** In addition to citing several cases from these jurisdictions, Fairchild also cites several federal cases applying the *Erie* doctrine. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). These cases have provided little guidance because the *Erie* doctrine is not applicable in how this Court should interpret *W.Va.Code,* 55–2A–2 [1959], our borrowing statute.

**8.** *See Morgan v. Biro Manufacturing Co., Inc.,* 15 Ohio St.3d 339, 474 N.E.2d 286 (1984)(adopting *Restatement (Second) of Conflict of Laws* (1971) which affords a presumption that the law of the place of injury controls unless another jurisdiction has a more significant relationship); *Jones v. Mid America Expositions, Inc.,* 708 F.Supp. 173 (S.D.Ohio 1989).

**9.** 10 *Del. C.* § 8120 ("an action can not be brought ... after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state ... where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply."); *Frombach v. Gilbert Associates, Inc.,* 236 A.2d 363 (Del.1967), *cert.*

*denied,* 391 U.S. 906, 88 S.Ct. 1655, 20 L.Ed.2d 419 (1968)(interpreting the Delaware borrowing statute quoted above).

**10.** *M.C.L.A.* § 600.5861 ("[a]n action based upon a cause of action accruing without this state shall not be commenced after the expiration of the statute of limitations of either this state or the place without this state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of this state the statute of limitations of the state shall apply"); *Makarow v. Volkswagen of America, Inc.,* 157 Mich.App. 401, 403 N.W.2d 563 (Mich.App.1987)(interpreting the Michigan borrowing statute quoted above). Fairchild cites several other cases interpreting this Michigan borrowing statute.

**11.** *McKinney's Consolidated Laws of New York,* Book 7B, § 202 (1972)(New York's borrowing statute is similar to Michigan's; *see* note 10 for Michigan's statute); *Lehtonen v. E.I. DuPont De-Nemours & Co., Inc.,* 389 F.Supp. 633 (D.Mont.1975)(interpreting the New York borrowing statute quoted above). Fairchild cites several other cases interpreting this New York borrowing statute.

**12.** *Mo.Rev.Stat.* § 516.190 (if a cause of action is "fully barred" in originating state, "said bar shall be a complete defense"); *Davis v. Liberty Mutual Ins. Co.,* 55 F.3d 1365 (8th Cir.1995)(interpreting the Missouri borrowing statute quoted above). Fairchild cites several additional cases interpreting this Missouri borrowing statute.

same statutory language as West Virginia. *See Hayes, supra,* 192 W.Va. at 371 n. 5, 452 S.E.2d at 462 n. 5 (recognizing that other jurisdictions employ "different methodologies" and that "it is difficult to formulate a legal principle capable of easy application").

A number of courts have adopted the position that once an action is filed timely, the operation of the borrowing statute ceases and "the court must necessarily ascertain the rights of the parties under such statute in accordance with its own rules of pleading and procedure and not in accordance with those of the foreign jurisdiction. (citations omitted)." *Knight v. Moline E.M. & W. Ry. Co.,* 160 Iowa 160, 169, 140 N.W. 839, 842 (1913). *See Scott by Ricciardi v. First State Ins. Co.,* 155 Wis.2d 608, 617, 456 N.W.2d 152, 157 (1990)("While the 'borrowed' foreign statute determines the applicable period of limitation, we look to Wisconsin tolling law to determine if that period has expired"); *Fowler v. Herman,* 200 Tenn. 201, 203, 292 S.W.2d 11, 12 (1956)(timely filing of original suit means that the borrowing statute's requirements are met); *Cook v. Britt,* 8 Ill.App.3d 674, 678, 290 N.E.2d 908, 911 (1972)(borrowing statute "does not apply because that action filed in Georgia was in apt time"); *Wright v. New York Underwriters' Ins. Co.,* 1 F.Supp. 663, 664 (W.D.Mo.1932)(once jurisdiction attaches "it was not necessary for the parties to look to the limitation of Kansas to ascertain whether or not the procedure in Missouri (the forum state) would be affected thereby").[13] *Cf. King v. Nashua Corp.* 763 F.2d 332 (8th Cir.1985)(Missouri savings statute only applies when first suit is filed in Missouri); *Christner v. Chicago, Rock Island & Pacific R.R. Co.,* 228 Mo.App. 220, 64 S.W.2d 752 (1933)(once jurisdiction attaches forum state procedures, including the savings statute, control).

Although most states have borrowing statutes, there is little uniformity in construction. "Cases interpreting one of these statutes, or defining its scope, have little relevance to other differently worded statutes." *American Conflicts Law* § 128 (Robert A. Leflar,

Luther L. McDougal, III & Robert L. Felix eds. 4th ed.1986). According to *Handbook of the National Conference of Commissioners on Uniform State Laws 1978,* Table II— Model Acts, only three states, West Virginia, Oklahoma and Michigan, adopted the *Uniform Statute of Limitation on Foreign Claims Act ("1957 Uniform Act").* Subsequently in 1978, another state, Pennsylvania, the adopted the *1957 Uniform Act.*

However, these jurisdictions do not provide a clear answer to the question of whether the "period of limitation" includes the foreign state's tolling provisions. Oklahoma has carved out several exceptions from *Okla. Stat Ann.* tit. 12 § 105 (West 1970), the *1957 Uniform Act. See Western Natural Gas Co. v. Cities Service Gas Co.,* 507 P.2d 1236 (Okl.), *cert. denied,* 409 U.S. 1052, 93 S.Ct. 559, 34 L.Ed.2d 506 (1972)(legislature could not have intended the borrowing statute to borrow the limitation law of a jurisdiction where the defendant could not be summoned); *Perkins v. Perkins,* 541 P.2d 379 (Okl.App.1975)(refusing to bar suit on note based on Oklahoma's shorter period of limitation).

Michigan, which in 1978 substantially amended its borrowing statute [14], has two cases addressing its former borrowing statute, the statute that is similar to our borrowing statute. In *DeVito v. Blenc,* 47 Mich. App. 524, 209 N.W.2d 728 (1973), the court only borrowed the Ontario limitation period and not the tolling rule. Instead, the Michigan infant disability tolling statute was applied to preserve the claim. The *DeVito* court reached this result by considering the language of the two statutes and the purpose of Michigan's disability tolling statute. However, this reasoning was rejected in *Waldron v. Armstrong Rubber Co.,* 64 Mich.App. 626, 236 N.W.2d 722 (1975)(applying Michigan's three-year statute of limitation because it is shorter than the four-year statute of limitation under UCC 2–725(2)). In *Waldron,* 64 Mich.App. at 632–33, 236 N.W.2d at 725, the court found that their borrowing statute, by using the phrase "whichever *bars the claim*

---

**13.** *See* note 12 for text of Missouri's borrowing statute.

**14.** *See* note 10 for text of Michigan's current borrowing statute.

(emphasis added)," imports both the statute of limitation and any tolling provisions. *In accord Graham v. Ferguson*, 593 F.2d 764 (6th Cir.1979) (*per curiam*)(noting the Supreme Court of Michigan has not ruled on the extent of Michigan's former borrowing statute).

Pennsylvania, which does borrow the tolling provisions from other jurisdictions under 42 *Pa.C.S.A.* § 5521 [1978], the *1957 Uniform Act*, does not have tolling or savings provisions except "to relieve fraud or its equivalent." 42 *Pa.C.S.A.* § 5504(b) [1978]. Because Pennsylvania lacks a tolling or savings provision, the statute of limitation under Pennsylvania law is generally shorter than the statute of limitation, with any tolling provisions, of the place where the claim accrued. Under the *1957 Uniform Act*, Pennsylvania courts are not required to borrow a longer statute of limitation. The lack of a tolling or savings statute reflects a legislative decision to limit a plaintiff's ability to bring suit. A similar legislative intent is not found in West Virginia as shown by *W.Va.Code*, 55–2–18 [1985], our remedial and broadly structured savings statute. *See supra* this section for text of our savings statute.

■ Because the language of *W.Va.Code*, 55–2A–2 [1959], although appearing to limit the borrowing from another state, is not definitive, and there appears to be little uniformity either in the structure or interpretation of the borrowing statutes of other jurisdictions, we now consider the issue as a question of "choice of law" or "conflict of laws." We conclude that *W.Va.Code*, 55–2A–2 [1959] does not require the application of any *tolling* provisions from the place where the claim accrued when a claim accruing outside West Virginia is filed in this State. The determination of which state's tolling provisions should be applied is to be resolved under conflicts of laws provisions.

■ Traditionally, West Virginia courts apply the *lex loci delicti* choice-of-law rule; that is, the substantive rights between the parties are determined by the law of the place of injury. *Blais v. Allied Exterminating Co.*, 198 W.Va. 674, 482 S.E.2d 659 (1996); *Paul v. National Life*, 177 W.Va. 427, 352 S.E.2d 550 (1986); *Vest v. St. Albans Psychiatric Hospital, Inc.*, 182 W.Va. 228, 229, 387 S.E.2d 282, 283 (1989). However, under the *lex loci delicti* choice-of-law rule, West Virginia procedure applies to all cases before West Virginia courts. "It is traditional that a forum court always applies its own procedural rules and practices, regardless of the procedure that might be employed if the case were tried at the place where the cause of action arose. (footnote omitted)." *American Conflicts Law, supra* § 121; *Vest, supra,* 182 W.Va. at 229–30, 387 S.E.2d at 283–84 (holding notice requirement of Virginia's statute on medical malpractice review panels to be a procedural rule); *Restatement (Second) of Conflict of Laws* § 122 (1971)("A court usually applies its own local law rules prescribing how litigation shall be conducted ...").

Statutes of limitation have traditionally been considered procedural because the "purpose of a statute of limitation is to protect both the parties and the local courts against the prosecution of stale claims." *Restatement (Second) of Conflict of Laws* § 142, cmt. d (1971).[15]

In the area of insurance law, we have modified our approach "somewhat to reflect the modern approach to conflict of laws analysis contained in the Restatement (Second) of Conflict of Laws. (footnote omitted)." *Nadler v. Liberty Mut. Fire Ins. Co.*, 188 W.Va. 329, 334, 424 S.E.2d 256, 261 (1992). In Syllabus Point 2 of *Lee v. Saliga*, 179 W.Va. 762, 373 S.E.2d 345 (1988), we used a "significant relationship to the transaction and the parties" to determine what state's law should be applied to construing the provisions of a motor vehicle policy. In *Nadler*, we found that Ohio law should control because it had the more significant relationship. In *Lee v. Saliga*, 179 W.Va. at 769, 373 S.E.2d at 352, we said:

15. Although the "substance" and "procedure" distinction is longstanding, maybe dating back to the middle ages, the *Restatement (Second) of Conflict of Laws* § 122 cmt. b (1971) discourages using these labels mechanically and suggests that "the question whether the forum's rule should be applied" be faced directly.

This law [arising from the state with a significant relationship] should control the reasonable expectation of the parties, rather than that of another state whose only connection to the dispute is the fortuity that the accident occurred there.

■ We find that the traditional approach to conflict of laws creates a presumption that the forum state's tolling provisions, as a matter of procedure, apply; however, if another state has a more significant relationship to the transaction and the parties, the modern approach indicates that the tolling provisions of the state with the significant relationship should apply. Based on both our traditional and modern approaches to conflict of laws questions, we hold that where a choice of law question arises about whether the tolling provisions of West Virginia, *W.Va.Code*, 55–2–18 [1985] or of the place where the claim accrued should be applied, the circuit court should ordinarily apply West Virginia law, unless the place where the claim accrued has a more significant relationship to the transaction and the parties.

Our holding is based on the "spirit, purposes and objects of the general system of law" (Syllabus Point 1, in part, *Hayes*), which is shown in both statutory provisions. *See also Restatement (Second) of Conflict of Laws* § 8 cmt. i (1971). In applying the shorter period of limitation to the original filing of an action accruing outside this State, we continue to discourage forum shopping and the filing of stale claims. In applying the West Virginia tolling statute, unless the state where the claim accrued has a more significant relationship to the transaction and the parties, we offer a remedy for the harsh effect of the statute of limitations when an action was originally timely filed but dismissed upon a ground not going to the merits. In *Smith v. Eureka Pipe Line Co.*, 122 W.Va. 277, 280, 8 S.E.2d 890, 892 (1940), we said, "It is, of course, clear that Code 55–2–18, applies universally to statutes of limitation, and that it is to be read *in pari materia* with our other statutes dealing with that subject matter." The language of *W.Va.*

*Code*, 55–2–18 [1985] does not limit its application to claims arising in West Virginia. *See supra* this section for complete text of *W.Va.Code*, 55–2–18 [1985].

■ In this case, both the traditional and modern approach require the conclusion that the West Virginia savings statute, *W.Va. Code*, 55–2–18 [1985], must be applied in this situation. The traditional approach classifies the statute of limitation question, except as changed by statute, as procedural, thereby requiring the law of the forum state. Under the traditional approach, *W.Va.Code*, 55–2–18 [1985] as a procedural rule, unaffected by statute, is applied in this State's courts. If the "significant relationship" approach of *Lee v. Saliga* is used, West Virginia has the more significant relationship because the plaintiffs are West Virginia residents and the defendant is a West Virginia corporation.[16] Kentucky, the site of the accident, has minor contacts with the parties. The reasonable expectation of the parties would be that the law of West Virginia concerning tolling would be applied rather than the law of Kentucky, "whose only connection to the dispute is the fortuity that the accident occurred there." *Lee v. Saliga, supra*, 179 W.Va. at 769, 373 S.E.2d at 352; *Nadler, supra*, 188 W.Va. at 335, 424 S.E.2d at 262.

Based on the language of the statutes and our conflicts of law analysis, we find that the circuit court erred in failing to apply *W.Va. Code*, 55–2–18 [1985], the West Virginia savings statute, and we remand this case for the circuit court to apply *W.Va.Code*, 55–2–18 [1985] to the circumstances of this case.

### C.

### *Discovery Rule*

The McKinneys maintain that the circuit court erred in failing to find that Kentucky's discovery rule tolled Kentucky's one-year statute of limitation (*see supra* section II.B. for text of Kentucky's statute of limitation) until November 15, 1993 when an abstract of

---

**16.** We note that Fairchild, as a West Virginia corporation, was subject to local service and is not surprised by the action or subject to a stale claim. According to *American Conflicts Law,*

*supra* § 129, "The better rule is that the tolling provision was never meant to apply to persons who are at all times subject to local service. (footnote omitted)."

the investigation by the U.S. Dept. Of Labor, Mine Safety & Health Administration was received by their counsel. Fairchild maintains that Kentucky's discovery rule is not applicable because Mr. McKinney knew of his injury and its cause on April 22, 1993, the date of his injury.

■ Traditionally, we apply the *lex loci delicti* choice-of-law rule; that is, the substantive rights between the parties are determined by the law of the place of injury. Syllabus Point 1 of *Paul v. National Life, supra,* states: "In general, this State adheres to the conflicts of law doctrine of *lex loci delicti.*" *See Blais v. Allied Exterminating Co., supra; Vest, supra,* 182 W.Va. at 229, 387 S.E.2d at 283. The parties agree that Kentucky law applies, but disagree on the application.

■ Under present Kentucky law, the critical date that triggers the statute of limitation is the date that Mr. McKinney "knew or should have known" that he was negligently injured and by whom. The Kentucky discovery rule has its genesis in medical malpractice claims and has evolved to include latent personal injuries. In *Tomlinson v. Siehl,* 459 S.W.2d 166 (Ky.1970), Kentucky extended the statute of limitations where the negligent treatment occurred more than one year before the injury was apparent. The discovery rule was defined the following year in *Hackworth v. Hart,* 474 S.W.2d 377, 379 (Ky.1971)("[T]he statute begins to run on the date of the discovery of the injury, *or from the date it should, in the exercise of ordinary care and diligence, have been discovered.* (emphasis in original)"). The rule was reaffirmed in *Louisville Trust Co. v. Johns–Manville Products Corp.,* 580 S.W.2d 497, 500 (Ky.1979) ("An action for medical malpractice accrues, and begins the running of the limitations period 'on the date of the discovery of the injury, or from the date it should, in light of ordinary care and diligence, have been discovered'"). *See Conway v. Huff,* 644 S.W.2d 333, 334 (Ky.1982) ("Does the statute start to run when the surgery patient discovers the sponge or when an attorney tells the patient that legal action lies against the surgeon? Obviously the answer must be with the discovery that a wrong has been committed and not that the party may sue for the wrong"); *Farmers Bank & Trust Co. v. Rice,* 674 S.W.2d 510 (Ky.1984)(discovery of the cancer and the realization that the defendant misdiagnosed the illness should have occurred at the same time); *Rigazio v. Archdiocese of Louisville,* 853 S.W.2d 295 (Ky.App.1993)(student's suppressed memory of abuse does not fall within the discovery rule, where the student was aware of the abuse when it occurred). The application of the discovery rule by the Kentucky Supreme Court has been limited to medical malpractice and other latent personal injuries.

*See also Imes v. Touma,* 784 F.2d 756 (6th Cir.1986)(applying Kentucky's discovery rule); *Munn v. Pfizer Hospital Products Group, Inc.,* 750 F.Supp. 244, 246 (W.D.Ky.1990)(knowledge of the cracked medical device and suspicion that the crack resulted from a defect is "sufficient to beg[i]n the one year time period for claims based upon strict liability and negligence"). *Cf. Farm Credit Bank of Louisville v. U.S. Mineral Products Co.,* 864 F.Supp. 643 (W.D.Ky.1994)(applying discovery rule to a property damage action in which the manufacturer of fireproofing containing asbestos conspired to deprive public of data).

■ In this case, Mr. McKinney knew his injuries occurred while he was operating a machine manufactured by Fairchild. To discover Mr. McKinney's injuries is also to discover the possibility of Fairchild's negligence; the discovery of the injury and the realization of its cause should have occurred at the same time. This case is not similar to *Louisville Trust Co.,* in which the Kentucky Supreme Court held that the cause of action does not begin to run at the end of exposure, when the harm occurred, but rather after the diagnosis of the illness because the diagnosis is when the plaintiff had knowledge of the facts from which he knew or should have known that he was injured by the defendant. "[W]hen an injury does not manifest itself immediately the cause of action should accrue not when the injury was initially inflicted, but when the plaintiff knew or should have known that he had been injured by the

conduct of the tortfeasor." *Louisville Trust Co.,* 580 S.W.2d at 500.

We find that Mr. McKinney knew or should have known on the date of his injury of the possible negligence of Fairchild, and therefore, the date of injury, not date of the correspondence from the federal agency, triggers the running of the statute of limitations in this case. The correspondence from the federal agency only confirmed Mr. McKinney's knowledge that his injuries were caused by the Fairchild machine. We conclude that the circuit court did not err in finding that the Kentucky discovery rule did not extend Kentucky's one-year statute of limitation.

## D.

### *Conclusion*

In this case, although we find that the circuit court did not err in finding that the Kentucky discovery rule in this case did not toll the running of the statute of limitations, the circuit court erred in applying the tolling provisions of Kentucky, the place where the claim accrued and in not applying the tolling provisions of West Virginia. We find that the McKinneys' complaint should not have been dismissed because *W.Va.Code,* 55–2–18 [1985] may toll the statute of limitation, which would allow this case to proceed. On remand, the circuit court should apply the tolling provisions of *W.Va.Code,* 55–2–18 [1985], because Kentucky does not have a more significant relationship than West Virginia to this transaction and these parties. If the circuit court finds that the provisions of *W.Va.Code,* 55–2–18 [1985] toll the statute of limitation, Fairchild's motion for summary judgment should be rejected.

For the above stated reasons, the order of the Circuit Court of Raleigh County is affirmed, in part, reversed, in part and remanded with directions.

Affirmed in part; reversed in part; and remanded.